**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Koch,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Desert States Employers & UFCW Unions Pension Plan, et al.,<br><br>　　　　　Defendants. | No. CV-20-02187-PHX-DJH<br><br>**ORDER** |

This matter is before the Court on Plaintiffs' Unopposed Motion for Certification of Settlement Class, Preliminary Approval of Class-Action Settlement and Approval of Form and Manner of Notice. (Doc. 20). Plaintiff Robert Koch, on behalf of himself and all others similarly situated, and Defendants Desert States Employers & UFCW Unions Pension Plan (collectively, "Defendants"), have agreed to settle this matter on the terms and conditions stated in the Settlement Agreement.

The parties move the Court to (1) certify the class conditional for settlement, (2) conditionally certify Plaintiffs as class representative, (3) conditionally certify Plaintiffs' counsel as class counsel, (4) preliminarily approve the proposed settlement agreement, and (5) approve the proposed class notice. (*Id.*)

**I.　　Background**

In 2018, Plaintiff filed a class action lawsuit to remedy alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") by the Defendants Desert States Employers and UFCW Unions Pension Plan ("Plan"), and its fiduciary Trustees.

*See Koch v. Desert States Employers & UFCW Unions Pension Plan*, Case No. 2:18-cv-04458-SMB (D. Ariz.). In that lawsuit, Plaintiffs alleged that these violations resulted in the forfeiture and underpayment of pension benefits to Plaintiff and hundreds of putative class members. (Doc. 20 at 2). Plaintiff alleged that when he commenced benefits at age 65 and later learned that the "normal retirement age" under the Plan was age 62, the Defendants violated ERISA by failing and refusing to actuarially increase his monthly pension benefits to account for the three years of normal retirement benefits he was entitled to but did not receive between ages 62 and 65 and by failing to properly disclose the right to increased benefits for retirement after age 62. (*Id.* at 2). Plaintiff further contended that Defendants applied an unlawful Plan amendment to suspend, and thereafter recoup, a portion of the benefits already paid for working post-retirement in a job that was not prohibited for retirees before adoption of the challenged amendment. (*Id.*) Plaintiff also asserted individual ERISA violations for failing to provide documents and failing to adhere to ERISA claims regulations. (*Id.*)

In 2018, at the time the case was filed, the Court had instituted the Mandatory Initial Discovery Pilot Project with strict deadlines for responses and disclosures. (*Id.* at 3). Following discussions between counsel, the parties entered into a tolling agreement to toll the statute of limitations for Plaintiff and all putative class members, and Plaintiff agreed to dismiss the suit without prejudice to facilitate the parties' efforts to engage in settlement discussions and mediation. (*Id.*) The tolling agreement was extended several times. (*Id.*) Following several years of extensive discovery, arm's length negotiations, the refiling of this case in 2020, mediation and further negotiations, the parties agreed to the Settlement. (*Id.*)

Under the Settlement, Defendant Plan has agreed to pay a total of $7,950,000 (with no reversion) to a Settlement Fund from which the 339 retiree or beneficiary Class Members will receive individual Settlement Awards proportionately allocated based on uniform criteria pursuant to the proposed Plan of Allocation. (*Id.*) Plaintiff now requests this Court be satisfied that it is likely to approve the Settlement and certify the proposed

classes, approve the proposed form and mailing of the Notice, certify the Settlement Classes, and preliminarily approve the Settlement Agreement.

## II. Legal Standard

The Ninth Circuit has declared a strong judicial policy for settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (holding when parties seek approval of a settlement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement").

When parties seek class certification only for the purposes of settlement, the Court "must pay 'undiluted, even heightened, attention' to class certification requirements" because, unlike in a fully litigated class action suit, the Court will not have future opportunities "to adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005); *see also Amchem*, 521 U.S. at 622 (observing that nowhere does Rule 23 say that certification is proper simply because the settlement appears fair). In conducting the second part of its inquiry, the "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'" *Staton*, 327 F.3d at 952 (*quoting Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, "'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class.'" *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (*quoting In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004)). In this Order, therefore, the Court will only "determine [ ] whether a proposed class action settlement deserves preliminary approval" and lay the groundwork for a future fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the fairness hearing, after notice is given to the Proposed Class members, the Court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the Settlement Agreement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). After the fairness hearing, the Court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.

**III.    Discussion**

    **A.    Preliminary Certification of the Settlement Class**

A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ("Rule") 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978), the Court must conduct a rigorous inquiry before certifying a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403–05 (1977).

As noted above, despite the parties' agreement that a class exists for the purposes of settlement, this does not relieve the Court of its duty to conduct its own inquiry. *Mathein v. Pier 1 Imports (U.S.), Inc.*, 2017 WL 6344447, at *7 (E.D. Cal. Dec. 12, 2017). Typically, when parties settle before the class is certified, the court is denied adversarial briefs on the class certification issue. *Id.* Therefore, although the parties agree, at least for the purposes of settlement, that class treatment is appropriate, the Court must nonetheless decide whether the issues in this case should be treated as class claims pursuant to Rule 23. *Id.*

### 1. Rule 23(a)

Rule 23(a) restricts class actions to cases where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon*, 150 F.3d at 1019.

#### a. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). While the numerosity requirement is not tied to any fixed numerical threshold, generally, a "class of 41 or more is usually sufficiently numerous." 5-23 Moore's Federal Practice—Civil § 23.22 (2016). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982*); see also id.* (court is "inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71 . . .").

Here, the parties agree that the Settlement Class consists of 288 individuals in the Actuarial Class, including Robert Koch, and 52 individuals in the Suspension Class, including Robert Koch. (Doc. 20 at 11). The parties argue this number of Class Members easily satisfies the numerosity standard and granting certification furthers the interests of judicial economy and avoids duplicative suits brought by other putative settlement class members demanding the same relief. (*Id.*) The Court preliminarily finds that joinder would be impracticable and that the numerosity requirement has been met.

### b. Commonality

Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed. R. Civ. P. 23(a)(2). Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that all questions of law and fact be common." *West*, 2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019). The commonality requirement is met "when the common questions it has raised are apt to drive the resolution of the litigation . . . ." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal quotation and citation omitted).

Here, the claims raise common questions of law with respect to the proper interpretation of the Plan and ERISA capable of class wide resolution. Whether the Plan and ERISA were violated by the failure to accord actuarial increases to participants who retired following normal retirement age, whether Defendants breached their fiduciary duties and failed to provide adequate Summary Plan Descriptions ("SPDs") are claims that are common to the Actuarial Class. (Doc. 20 at 12). Likewise, whether Defendants violated ERISA by applying amendments that expanded the scope of prohibited employment following retirement, whether Defendants breached their fiduciary duties and failed to provide adequate summary plan descriptions are common to all Suspension Class Members. (*Id.*) The Court's resolution of Plaintiffs' claims will therefore resolve the common claims of the class. *See Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). Therefore, the commonality requirement has been met.

/ / /

### c. Typicality

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but the claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). This ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

Here, the Named Plaintiff alleges that he was harmed in precisely the same way the Class Members were harmed. (Doc. 20 at 13). The claims of Named Plaintiff are typical of the claims of the Rule 23 Class Members. (*Id.*) Indeed, the Complaint asserts "Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the classes as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the classes, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the class as a whole." (Doc. 1 at ¶ 81). Therefore, the Court concludes Plaintiffs claims are typical of the claims of the Class Members and finds the typicality requirement has been met.

### d. Adequacy of Representation

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To resolve the question of legal adequacy, the Court must answer two questions: (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members, and (2) whether the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the

qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem*, 521 U.S. at 626 n.20. Moreover, the examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification. That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' interests and their course of legal redress do not appear to be at odds with those of the Class Members and they appear to have no conflict of interest with the members of the Class Members. (Doc. 20 at 14). Additionally, Plaintiffs' counsel has overseen many class action cases and settlements. (*Id.*) The Court finds that there are no apparent conflicts present.

The second prong of the adequacy inquiry examines the vigor with which Plaintiff and his counsel have pursued the common claims. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Probing Plaintiff and his counsel's rationale for not pursuing further litigation, however, is inherently more complex. "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'" *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 620).

Here, Plaintiffs' Counsel avows that the parties have diligently and competently prosecuted the claims alleged on behalf of the Settlement Class to date; he states that he has "undertaken to prosecute this action vigorously and has invested substantial time and expended substantial resources in the process; [c]ounsel further engaged in substantial discovery and damages analysis at significant expense." (Doc. 20 at 14). Therefore, the Court finds that the adequacy of representation requirement has been met.

### 2. Rule 23(b)

In addition to satisfying all four requirements of Rule 23(a), Plaintiff must show the Proposed Class meets one of three threshold requirements under Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). That is, Plaintiff must show either: (1) prosecuting separate actions would create a risk of inconsistent or dispositive adjudications; (2) the opposing party's actions have applied to the class generally such that final relief respecting the whole class is appropriate; or (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

Here, the parties argue this case qualifies for certification under Rule 23(b)(3). (Doc. 20 at 15). A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon*, 150 F.3d at 1022; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). Predominance requires that questions common to the Proposed Class predominate over individualized inquiries. Fed. R. Civ. P. 23(b)(3).

Here, the Settlement Agreement resolves claims on a common basis through uniform methodology to calculate damages and relief to each Class under the Plan of Allocation. (Doc. 20 at 15). Each Class Member will receive an Individual Settlement Benefit based on the same formulas, which are set forth in the Plan of Allocation. (*Id.*) Because the relief to the Class Members will be calculated under uniform formulas and

criteria applicable to all members of each class, the Court finds common issues predominate for all Class members. This commonality predominates over any possible individual issues among Class Members. *Bogner*, 257 F.R.D. at 534; *Brink v. First Credit Res.*, 185 F.R.D. 567, 572 (D. Ariz. 1999) ("[C]ourts routinely certify classes in cases such as this, in which the alleged misconduct occurs in the form of a standardized writing by a common defendant."); *see also Gonzalez v. Germaine Law Office PLC*, 2016 WL 3360700, at *3 (D. Ariz. June 1, 2016). The only matter of individual variation is the amount of recovery, which differs based on the Suspension Class Members and the Actuarial Class Members. (Doc. 20 at 20). This factor alone does not undermine predominance. *Leyva v. Medline Indus. Inc.*,716 F.3d 510, 513 (9th Cir. 2013) (stating, "[i]n this circuit . . . damage calculations alone cannot defeat certification"). Additionally, Plaintiff does not have any unique claims that are not common to the Class Members. The Court, therefore, finds that common questions of law and fact predominate.

### b. Superiority

To satisfy Rule 23(b)(3), Plaintiff must also prove class resolution of the case is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace*, *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, hundreds of adjudications on the same issue would be time consuming, extraordinarily expensive and constitute an enormous waste of judicial resources. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("[T]here are sound reasons for the trial court's determination that this action was best maintained as a class suit. Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated.").

Although some individuals will receive substantial Individual Settlement Awards, some have much smaller damages where the time, effort and difficulty of proof could substantially outweigh the benefits of and ability to bring suit. (Doc. 20 at 16). The Court finds that a class action is the superior form to resolve these claims.

For the foregoing reasons, the Court finds that class treatment of the claims appears to be warranted and, therefore, will preliminarily certify this matter as a class action.

**B.    Preliminary Evaluation of Fairness of Proposed Class Action Settlement**

Having determined that class treatment appears to be warranted, the Court now decides whether to preliminarily approve the Settlement Agreement. *Gonzalez*, 2016 WL 3360700, at *4. Under Rule 23(e), a court must evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it. Fed. R. Civ. P. 23(e)(2). Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (internal quotation and citation omitted). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone" is insufficient. *In re Bluetooth*, 654 F.3d at 946. In these cases, courts must not only conduct a comprehensive analysis of the above factors, but must also determine whether the settlement resulted from collusion among the parties. *Id.* at 947. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *accord In re Gen. Motors*, 55 F.3d at 805 (stating that courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified").

However, at the preliminary approval stage, courts need only evaluate "whether the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotation and citation omitted). The Court is cognizant that "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

At this time, the Court will simply review the terms of the parties' Settlement Agreement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members and conducting the final fairness hearing. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Because it is provisional, courts grant preliminary approval of a class action settlement where the proposed settlement does not indicate grounds to doubt its fairness. *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (*quoting* Manual for Complex Litigation (Third) § 30.41).

Here, individuals are Class Members if they meet the Actuarial Class definition or the Suspension Class definition. Class Counsel undertook to review scanned copies of over 2,700 paper benefits files to determine which Plan participants were harmed by the claims asserted in the complaint and thereafter conducted an extensive analysis and engaged an expert actuary to conduct a detailed individual-by-individual analysis of the claims in the case and calculate potential damages. (Doc. 20 at 18). The Parties and their experts represent that they have exchanged extremely detailed analyses of methodology and calculations and had multiple calls and emails to debate the calculation methods and damages analyses for the Class Members. (*Id.*) The Settlement provides a recovery to all of the Class Members, thereby eliminating completely the risk of non-certification and/or decertification. (*Id.* at 19).

The parties' Settlement Agreement, arrived at after lengthy discussions with an

experienced private mediator, evidences good faith negotiation and a thorough process for noticing the Class Members. As there is no evidence to suggest that the settlement was negotiated in haste nor is there evidence of collusion, the Court is preliminarily satisfied that the Settlement Agreement was the product of serious, informed, non-collusive negotiations.

### 2. Preferential Treatment for Plaintiff

The Ninth Circuit cautions district courts to be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

Here, the Named Plaintiff is requesting a Case Contribution Award of $20,000 that he says is due to the extensive efforts on behalf of the Classes and the assistance he provided to the Class Counsel including pursuing these claims on a class basis, his active participation in discovery and the mediation as compensation for the work he performed, and the serious risks he bore which benefitted the class. (Doc. 20 at 21). Class Counsel also requests attorney fees in the amount of 30% of the Settlement Fund ($2,385,000.00) and out of pocket costs and expense reimbursements of approximately $107,763.96 if approved by the Court for a total of $2,482,763.96 in fees and costs to be paid out of the Settlement Fund. (*Id.*) While not unreasonable on its face, at the hearing, the parties should be prepared to explain efforts taken as Proposed Class representatives and establish the

reasonableness of the awards, including any actual damages sustained as a result of Defendant's actions. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving an incentive payment of 0.17% of total settlement to the named plaintiff because he had "spent hundreds of hours with his attorneys and provided them with an abundance of information"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571–72 (7th Cir. 1992) (upholding a district court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services" in a settlement of $45 million).

### 3.     Settlement Fund Within Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080.

Here, Class Counsel asserts that with the help of their actuary, they have crafted a Plan of Allocation that treats all Class Members fairly. The Plan of Allocation for the Actuarial Class Members results in a percentage of damages approximately 67% of their maximum damages as computed by Plaintiffs' expert (before fees, costs and a case contribution award for Named Plaintiff). (Doc. 20 at 20). However, because of the methodology differences between the Parties' experts, the allocation to the Actuarial Class represents approximately 86% of Actuarial Class Members' maximum potential damages as computed by Defendants' expert. (*Id.*) The Plan of Allocation applies a 20% discount for statute of limitations for any Class Member who retired on or before December 1, 2012 (which is six years prior to the filing of Plaintiffs' Complaint). (*Id.*) For the Suspension Class, there were fewer differences in methodology between the Parties. The Suspension Class Members will receive a gross amount of between 84% to 97% of maximum damages for Suspension Class Members, depending on the computations of Plaintiffs' or Defendants' experts (before fees, costs, and a case contribution award for Named Plaintiff). (*Id.*) The Plan of Allocation also applies a 20% discount for statute of limitations for any Class Member who resumed receipt of benefits following a suspension on or before

December 1, 2012 (which is six years prior to the filing of Plaintiffs' Complaint). (*Id.*) All calculations utilize a favorable interest rate on all past losses of 7.5%. (*Id.*)

There are 288 Actuarial Class Members. (*Id.*) If the Fee Application, Case Contribution Award, and the Plan of Allocation are approved, it is expected that Actuarial Class Members will have an average recovery of approximately $14,842. (*Id.*) The highest recovery for an Actuarial Class Member is approximately $237,259 and the lowest recovery is $100. (*Id.*)

There are 52 Suspension Class Members. (*Id.*) If the Fee Application, Case Contribution Award and the Plan of Allocation are approved, it is expected that Suspension Class Members will have an average recovery of approximately $22,359. (*Id.*) The highest Suspension Class Member's recovery is approximately $100,953 and the lowest recovery is approximately $648. (*Id.*)

The Court preliminarily finds that the expected range of recovery appears to be the product of serious, informed, non-collusive negotiations.

### C.     Proposed Class Notice and Administration

Federal Rule of Civil Procedure 23(c)(2)(B) governs the requirements of notice in Rule 23(b)(3) class actions. The Rule provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice must clearly and concisely state in plain, easily understood language:

(i)    the nature of the action;
(ii)   the definition of the class certified;
(iii)  the class claims, issues, or defenses;
(iv)   that a class member may enter an appearance through an attorney if the member so desires;
(v)    that the court will exclude from the class any member who requests exclusion;
(vi)   the time and manner for requesting exclusion; and
(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* In addition, due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed class notice here meets all the requirements of Rule 23(c)(2)(B) and due process. The notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See, e.g., Rodriguez*, 2020 WL 6882844, at *8. The dissemination of the notice by direct mail amply satisfies the requirements of due process and Rule 23(c)(2). *Rodriguez*, 2020 WL 6882844, at *8. Moreover, because the Class Members are all retirees who receive payments and regular notices and information from Defendants, it is unlikely that Defendants would not have a particular Class Member's address. The Settlement further provides for searches to be conducted if mail comes back undeliverable. (Doc. 20 at 23).

The Court approves the form of notice and finds direct mail, with all reasonable efforts made to obtain updated addresses, is the "best notice that is practicable under the circumstances," and protects the rights of the class members. Fed. R. Civ. P. 23(c)(2)(B).

### III. Conclusion

The Court preliminarily finds that the Actuarial Class and the Suspension Class meets the requisite certification standards and grants conditional certification of the Class Members for settlement purposes. The Court also preliminarily approves the Settlement Agreement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the members of the Actuarial Class and the Suspension Class. However, on or before the fairness hearing, the Parties should present or be prepared to present evidence regarding Plaintiffs' substantial efforts taken as class representatives and the reasonableness of the proposed service awards.

/ / /

Accordingly,

**IT IS HEREBY ORDERED THAT**:

1. This Order incorporates by reference all definitions in the Settlement Agreement and all terms used herein shall have the same meanings as set forth in the Agreement.

2. The Court certifies the following classes under Fed. R. Civ. P. 23(b)(3) and appointing Plaintiff Robert Koch class representative and Martin & Bonnett, PLLC Class Counsel:

**Actuarial Class**

All Plan participants (and their surviving spouses and eligible beneficiaries) whose benefits files were produced by Defendants and who are identified on the Plan of Allocation and who did not commence receipt of benefits until after the Plan's Normal Retirement Date and who did not receive an actuarial increase or retroactive benefit payment with interest to account for the delay in receipt of their normal retirement benefits that were not subject to suspension.

**Suspension Class:**

All Plan participants (and their surviving spouses and eligible beneficiaries) whose benefits files were produced by Defendants and who are identified on the Plan of Allocation who had accrued benefits under the Plan or predecessor plans prior to adoption of the 1991 Intermountain Plan Amendment or the 1998 Plan Amendment and/or Heinz Amendments

3. The Court hereby preliminarily approves the settlement as set forth in the Settlement Agreement and the Plan of Allocation submitted with the Settlement Agreement as being fair, reasonable, and adequate to the Class Members and finds that it is likely to grant Final Approval to the Settlement.

4. The Court hereby preliminarily approves the Plan of Allocation the Settlement Agreement as Exhibit B.

5. The Court hereby approves, as to form and content, the Class Notice attached to the Settlement Agreement as Exhibit A and the Change of Information attached to the Settlement Agreement as Exhibit B.

6. The Court finds that the mailing of the Notice and methods for contacting and locating Class Members described in the Settlement Agreement constitutes the best notice practicable under the circumstances and constitutes valid and sufficient notice to all Class Members, complying fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law.

7. A Final Fairness Hearing shall be held on November 30, 2021 at 10:30 a.m., in Courtroom 605, Sandra Day O'Connor United States Courthouse, 401 W. Washington Street, Phoenix, Arizona 85003 for the purpose of determining:

    a. whether the proposed settlement as set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Class, and warrants Court approval;

    b. whether an order approving the Settlement and order of judgment should be entered, dismissing with prejudice the claims of the Named Plaintiff and the Class members who do not opt-out of the Settlement against the Defendants and that provides for the following:

        a) adjudging the Settlement to be fair, reasonable, and adequate;

        b) ordering that the Settlement Agreement is approved, directing consummation of the terms and provisions of the Settlement Agreement, and requiring the Parties to take the necessary steps to effectuate the terms of the Settlement;

        c) entering final judgment;

        d) determining pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Class Notice constitutes the best notice practicable under the circumstances, and that due and sufficient notice of the Final Fairness Hearing and the rights of all members of the Class has been provided;

        e) determining that Defendants complied with CAFA and its notice obligations by providing appropriate federal and state officials with information about the Settlement Agreement;

f) ordering that Named Plaintiff and each member of the Actuarial Class who does not opt out of the Action shall be deemed to have fully, completely, finally and forever settle and release all claims asserted against the Released Parties in the Action, including all claims against the individual Board of Trustee Members arising from the alleged failure to provide the actuarial increase adjustment owed under the terms of the Pension Trust for the delay between a member's normal retirement date and the start date of the member's retirement benefits and any other known and unknown claims arising out of the facts alleged in the Action;

g) ordering that Named Plaintiff and each member of the Suspension Class who does not opt out of the Action shall be deemed to have fully, completely, finally and forever settled and released all claims that asserted against the Released Parties in the Action, including all claims against the individual Board of Trustee Members arising from their alleged breaches of fiduciary duty in connection with suspension amendments to the 1991 Intermountain Plan Amendment, the 1998 Plan Amendment, and the Heinz Amendments and any other known or unknown claims arising out of the facts alleged in the Action

h) dismissing with prejudice the Lawsuit, without additional cost to any of the Parties other than as provided for in the Settlement Agreement;

i) approving the terms of the Settlement Agreement and Plan of Allocation and awarding payments to be made consistent with the terms of the Settlement Agreement and Plan of Allocation;

j) awarding attorneys' fees and costs for Class Counsel pursuant to the consistent with the terms of the Settlement Agreement;

k) awarding a Case Contribution Award to Named Plaintiff consistent with the terms of the Settlement Agreement;

      l)    ordering the Parties' submission to, and this Court's continuing retention of, exclusive jurisdiction over this matter for the purpose of effectuating and supervising the enforcement, interpretation, or implementation of the Settlement, and resolving any disputes that may arise thereunder.

6. Defendants are directed add the date and time of the Final Fairness Hearing, the deadline to object to the Settlement Agreement and request for attorneys' fees and costs and Service Award, the deadline to opt-out of the Action and other dates and information as applicable to the Class Notice and to mail the Class Notice to each Class Member at the last known address provided by Defendants or identified through Class Counsel, the Class Members and/or an NCOA address update service.

**IT IS FURTHER ORDERED** that the Motion for Preliminary Certification of Settlement Class, Appointment of Settlement Class Representatives and Class Counsel, and Preliminary Approval of Proposed Class Settlement (Doc. 20) is **granted.**

**IT IS FINALLY ORDERED** setting a Final Approval Hearing at **10:30 a.m. on November 30, 2021**, in Courtroom 605, Sandra Day O'Connor United States Courthouse, 401 W. Washington Street, Phoenix, Arizona 85003.

Dated this 23rd day of September, 2021.

*[signature]*
Honorable Diane J. Humetewa
United States District Judge