Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ #033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff and the Classes*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Koch,<br><br>Plaintiff, on behalf of himself and all others similarly situated<br><br>v.<br><br>Desert States Employers & UFCW Unions Pension Plan, et. al,<br><br>Defendants. | Case No.: 2:20-cv-02187-DJH<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**(Final Fairness Hearing Scheduled for November 30, 2021 at 10:30 a.m.)** |

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff hereby moves for final approval of the Class Action Settlement. This motion is supported by the Declaration of Named Plaintiff Robert Koch ("Koch Decl."), the Declaration of Susan Martin in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for a Case Contribution Award and Attorneys' Fees and Costs ("Martin 11/9 Decl.") and exhibits thereto, and the record before this Court.

**I.     INTRODUCTION**

The Settlement represents an excellent result. Defendant Plan has agreed to pay a total of $7,950,000 (with no reversion) to a Settlement Fund from which the 335 retiree

and beneficiary Class Members will receive individual Settlement Awards proportionately allocated based on uniform criteria pursuant to the proposed Plan of Allocation. As discussed more fully below, the Settlement merits final approval.

The facts, claims asserted by the Named Plaintiff and the procedural history of this case are reviewed in the Court's Order dated September 23, 2021, Doc. 29, certifying the Classes for settlement purposes and granting preliminary approval of the Settlement as well as in Plaintiff's Unopposed Motion for Certification of Settlement Class, Preliminary Approval of Class-Action Settlement, and Approval of Form and Manner of Notice. Doc. 20 at pp. 3-7. The Court's September 23, 2021 Order held, based on its preliminary review, that the Settlement Agreement appears "sufficiently fair, reasonable and adequate" to allow Notice to be sent. See Doc. 29, at 16. The Court also stated that the on or before the Final Fairness Hearing, the Parties "should present or be prepared to present evidence regarding Plaintiffs' substantial efforts taken as class representatives and the reasonableness of the proposed service award[]." Plaintiff is herewith filing a Motion for a Case Contribution Award and Attorneys' Fees and Costs, which along with the Koch Decl. and Martin 11/9 Decl. detail the substantial efforts undertaken by Class Counsel and by Named Plaintiff as a class representative. Plaintiff incorporates those filings herein by reference. The Final Fairness Hearing is scheduled for November 30, 2021, at 11:00 a.m. Doc. 29 at p. 20.

**II.     PROCEDURAL HISTORY AND DISCOVERY OBTAINED**

Plaintiff made an administrative claim with Defendants in 2018. Martin 11/9 Decl. ¶22. After receiving no response to his administrative claim, Plaintiff brought this class action lawsuit in 2018 to remedy alleged violations of ERISA by the Defendants Desert States Employers and UFCW Unions Pension Plan, ("Plan"), and its fiduciary Trustees, that Plaintiff asserted resulted in the forfeiture and underpayment of pension benefits to Plaintiff and hundreds of putative class members. Case No. 2:18-cv-04458-SMB (D. Ariz.). In 2018, at the time the case was filed, the Court had instituted the Mandatory Initial Discovery Pilot Project with strict deadlines for responses and disclosures. Following discussions between counsel, the parties entered into a tolling agreement to toll the statute

1  of limitations for Plaintiff and all putative class members and Plaintiff agreed to withdraw
2  the suit without prejudice to facilitate efforts to engage in settlement discussions and
3  mediation. Martin 11/9 Decl. ¶23. The tolling agreement was extended several times. *Id.*
4  Following several years of extensive discovery, arm's length negotiations, the refiling of
5  this case in 2020, mediation and further negotiations, the parties agreed to the Settlement.
6  *Id.* ¶¶23-31.

7  Following withdrawal of the 2018 complaint, the Parties embarked on lengthy
8  discovery. Defendants provided Plaintiff with more than 136,000 pages of documents,
9  including Plan documents and amendments, notices, records of Defendants' actuary's
10 calculations for certain Plan participants and scanned copies of participant benefit files. *Id.*
11 ¶26. When Plaintiffs began the discovery process, Defendants maintained they were doing
12 nothing wrong. *Id.* ¶¶15, 24. They asserted that the fact that Mr. Koch did not receive an
13 actuarial increase was somehow an idiosyncratic error that only affected Mr. Koch and was
14 not a class-wide issue. *Id.* However, Plaintiff pursued this claim and demanded more
15 information and proof of Defendants' assertion. *Id.* Plaintiff initially agreed to review a
16 sample of the potential class and then, upon seeing that the failure to provide an actuarial
17 increase affected more than Mr. Koch, Plaintiff demanded more information. *Id.* ¶24.

18 The duration of the discovery process was prolonged by the fact that Defendants
19 asserted that they had no system that could electronically filter for and identify putative
20 class members based either on their ages at retirement or benefit suspensions. *Id.* ¶25.
21 Consequently, Plaintiff was required to obtain, review and analyze imaged copies of the
22 benefit files for more than 2,700 Plan participants to identify Class Members. *Id.* ¶26. Class
23 Counsel's firm undertook to review all of the files, which required Class Counsel to hire
24 additional staff, and to identify, extract and review the data for the Class Members included
25 in the Settlement. *Id.* ¶¶9, 26.

26 During this time, Named Plaintiff also undertook his own review, providing the
27 information he obtained to Class Counsel. *Id.* ¶¶33-34. Named Plaintiff reviewed and
28 provided copies of his own documents to Class Counsel, contacted other employees and

retirees who may be Class members and regularly communicated with Class Counsel regarding the status of the proceedings. *Id. See also* Koch Decl. ¶18.

Class Counsel also engaged an expert actuary to conduct a detailed analysis of claims, and to calculate damages. Martin 11/9 Decl. ¶¶27-28. Defendants engaged their own actuary and performed alternative calculations including the impact of numerous claimed defenses. *Id.* These expert analyses were exchanged by the Parties. *Id.* Thereafter, after settlement discussions stalled, Plaintiff recommenced this lawsuit by filing the instant case with the Court on November 13, 2020. *Id.*¶28.

Subsequently, the Parties and their respective experts exchanged additional correspondence and held multiple joint conference calls to discuss the Parties' legal positions and experts' calculations. *Id.* On January 20, 2021, the Parties engaged in a full day mediation with a mediator with substantial ERISA and class action experience. *Id.* ¶30. Although the case did not settle during that mediation, the Parties continued to engage in settlement discussions with the mediator. *Id.*¶30. Those discussions resulted in a Term Sheet that was accepted by both parties on April 2, 2021. *Id.* Thereafter the Parties negotiated and executed the Settlement Agreement on June 4, 2021. *Id.*

### III. KEY TERMS OF THE SETTLEMENT

Class Counsel conducted a careful factual and legal analysis of the claims in the case, the defenses Defendants asserted, the risks inherent in continued litigation, potential damages, and the likelihood of potential outcomes of each claim at trial. After considering these factors, Class Counsel and Named Plaintiff agreed to a Settlement that provides a substantial recovery to the Class Members.

Class Counsel respectfully submits that these terms and conditions of the Settlement are fair, reasonable, and constitute an excellent result for Class Members. The key provisions of the Agreement, are the following:

A. The Parties agreed to seek class certification of the Actuarial Class and Suspension Class. Doc. 20-2, at ¶3.01

4

B.  Defendants will create a Settlement Fund of $7,950,000 from which the Individual Settlement Awards to Class Members, Fee Award and Case Contribution Award shall be paid. Pursuant to the mediator's proposal, $6,250,000 is allocated to the Actuarial Class and $1,700,000 is allocated to the Suspension Class pursuant to the Plan of Allocation. Doc. 20-2, at ¶2.01.

C.  There will be no reversion of any Settlement funds to Defendants and the Settlement contains a procedure to ensure all funds are paid out. Doc. 20-2, at ¶2.02

D.  Interest in the event payments are delayed is provided. Doc. 20-2, at ¶2.01(d).

E.  Costs of notice to Class Members and the administration of the Settlement will be paid by Defendants, not out of the Settlement Fund. Doc. 20-2, at ¶3.02.

F.  Release of claims that were asserted in the Action including a release for claims for breach of fiduciary duty arising out of the facts asserted in the Action. Doc. 20-2, at ¶5.01.

Defendants denied and continue to deny that they violated ERISA or the terms of the Plan and alleged a number of defenses including, *inter alia*, the statute of limitations that if accepted, could bar recovery for all or part of the claims. Martin 11/9 Decl. ¶16. Mr. Koch and the putative class members faced a number of risks including, but not limited to, risks related to establishing liability under complex ERISA statutory and Plan claims, the risk that a class might not be certified, risks associated with the statute of limitations and similar time-based defenses, and risks associated with determining damages which presented a myriad of issues concerning the appropriate methodology to calculate losses and a multiple of potential remedies if Named Plaintiff were to prevail on liability. *Id*.¶¶16-20. Class Counsel working with Class Counsel's actuarial expert determined the fair settlement value based on a thorough understanding of the various factors and risks including the risk of prevailing on the merits, the risks of achieving and maintaining class certification, statute of limitations risks, the risks and costs of continuing to litigate, the delay of trial, and subsequent potential appeals. Class Counsel also analyzed the impact of the Settlement on Named Plaintiff and all Class Members. Martin 11/9 Decl. ¶¶39-40. The

1  Settlement provides certainty and substantial benefits to the Settlement Class years earlier
2  than would otherwise have been possible.

### IV. PLAN OF ALLOCATION AND SETTLEMENT STATISTICS

The Plan of Allocation contains a detailed description of how the Settlement is allocated. Plaintiff is providing an Updated Plan of Allocation attached to the Martin 11/9 Decl. as Exhibit A.[1] The Agreement is based on a term sheet developed by the Mediator following extensive submissions by the Parties, an all-day mediation attended by the Parties' respective actuaries and representatives, and extensive follow-up discussions with the Mediator. Martin 11/9 Decl. ¶¶29-31. Prior to and during the mediation each side presented detailed submissions and complex calculations and spreadsheets regarding the assessment of damages. *Id.* ¶29. Finally, the Parties each separately accepted a proposal from the Mediator that set forth a total settlement amount of $7,950,000 and specified that of that amount, $6,250,000 should be allocated to the Actuarial Class and $1,700,000 should be allocated to the Suspension Class. *Id.* ¶30. Both of these allocations were proportional to the relative size of the Classes, the strengths and weaknesses of the claims and the damages each side contended were or could be due if litigation continued. *Id.*

In determining the Plan of Allocation, Class Counsel analyzed the relative strengths and weaknesses of the claims and defenses including Defendants' arguments concerning the damages calculations and statute of limitations. *Id.* ¶40. Based on this analysis and in coordination with Class Counsel's independent calculation of potential damages through Plaintiff's actuary, Class Counsel evaluated multiple approaches to allocating the total Settlement Fund and has concluded that the Plan of Allocation, which applies a uniform and proportional allocation for the members of each Class (with a 20% discount to class members whose claims may have arisen more than six years prior to commencement of the litigation in 2018), is the most equitable and provides for distribution of the Individual

---

[1] The revised Plan of Allocation removes the single Class Member who has opted out and reduces the amount of expenses sought by $18,271 and redistributes those amounts to the Class Members. Martin 11/9 Decl. ¶2. The reduction in costs is due to final costs for Plaintiff's actuary being less than anticipated.

Settlement Awards as fairly as possible. *Id.* ¶40-41.

Here, even if successful on the underlying claims, the Named Plaintiff faced substantial risk in establishing damages. *Id.* ¶18. Defendants disputed the methodology used by Class Counsel and their actuary, contending that even if Plaintiff prevailed, the Court would apply different methodologies that would have resulted in dramatically reduced recoveries for the Class Members. *Id.* Class Counsel with the help of their actuary have crafted a Plan of Allocation that treats all Class Members the fairly. The Plan of Allocation for the Actuarial Class Members results in a percentage of damages of approximately 67% of their maximum damages as computed by Plaintiffs' expert (before fees, costs and a case contribution award for Named Plaintiff). *Id.* ¶41. However, because of the methodology differences between the Parties' experts, the allocation to the Actuarial Class represents approximately 86% of Actuarial Class Members' maximum potential damages as computed by Defendants' expert. *Id.* The Plan of Allocation applies a 20% discount for statute of limitations for any Class Member who retired on or before December 1, 2012 (which is six years prior to the filing of Plaintiffs' Complaint). *Id.*

The Suspension Class Members will receive a gross amount of between 84% to 97% of maximum damages for Suspension Class Members, depending on the computations of Plaintiffs' or Defendants' experts (before fees, costs and a Case Contribution Award for Named Plaintiff). *Id.* The Plan of Allocation also applies a 20% discount for statute of limitations for any Class Member who resumed receipt of benefits following a suspension on or before December 1, 2012 (which is six years prior to the filing of Plaintiffs' Complaint). *Id.* ¶¶40, 41.

The Individual Settlement Award amounts were calculated by the actuary using each Class Member's individualized work history, periods of suspension of benefits, benefit amounts, age at retirement and length of time since retirement or suspension pursuant to established formulas applicable to each of the members of the Classes. *Id.* ¶43 and Ex. A. Because these amounts differ greatly among Class Members, there is a wide range of recoveries. All calculations utilize a very favorable interest rate on all past losses

of 7.5%. *Id.* ¶41. There are 335 Class Members. Martin 11/9 Decl. Ex. A p. 8. If the Fee Application, Case Contribution Award and the Plan of Allocation are approved, these Class Members will have an average recovery of approximately $16,283. *Id.* The highest recovery is approximately $238,044. *Id.* The smallest recovery is approximately $100. *Id.* There are four Class Members, including the Named Plaintiff, who are in both Classes. *Id.* As proposed, Plaintiff's Plaintiff will receive a total of $116,208.34 including his damages share of $96,208.34 and a Case Contribution Award of $20,000. Martin 11/9 Decl. ¶43. Plaintiff's net Actuarial Class recovery is approximately $40,88. *Id.* There are 24 Actuarial Class Members receiving more than he is receiving. Plaintiff's net Suspension Class recovery is $55,529.42. *Id.* There are five Suspension Class members receiving more than he is. As proposed, Plaintiff will receive a total of $116,208.34 including his damages share of $96,208.34 and a Case Contribution Award of $20,000. *Id.* There are four Class Members receiving more than Plaintiff is receiving. *Id.*

There are 287 Actuarial Class Members. Martin Decl. Ex. A p. 8. If the Fee Application, Case Contribution Award and the Plan of Allocation are approved, Actuarial Class Members will have an average recovery of approximately $14,942. *Id.* The highest recovery for an Actuarial Class Member is approximately $238,044 and the lowest recovery is approximately $100. *Id.*

There are 52 Suspension Class Members. *Id.* If the Fee Application, Case Contribution Award and the Plan of Allocation are approved, it is expected that Suspension Class Members will have an average recovery of approximately $22,432. *Id.* The highest Suspension Class Member's recovery is approximately $100,285 and the lowest recovery is approximately $651. *Id.*

## V. THE SETTLEMENT MEETS RULE 23(e) STANDARDS FOR FINAL APPROVAL

The Agreement eliminates the risk that the Class members will not recover in the litigation and provides for a Settlement Fund of $7,950,000 for the Class Members, all of whom are now older than the Plan's Normal Retirement Age. Final approval of the Settlement is warranted under factors enumerated in Rule 23(e)(2). Rule 23(e)(2) non-

exclusive factors to be utilized in evaluating whether a settlement is fair, reasonable, and adequate, include whether:
>  (A) the class representatives and class counsel have adequately represented the class;
>  (B) the proposal was negotiated at arm's length;
>  (C) the relief provided for the class is adequate, taking into account:
>  (i) the costs, risks, and delay of trial and appeal;
>  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>  (iv) any agreement required to be identified under Rule 23(e)(3); and
>  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.

As set forth in the Advisory Committee Notes, the foregoing Rule 23(e) factors in the 2018 amendment are not intended to displace the traditional factors that the Ninth Circuit and district courts have utilized to evaluate the fairness of a class settlement. Accordingly, courts continue to use the prior Ninth Circuit factors as a guide. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 n. 10 (9th Cir. 2020) (holding that "applying the amended version of the rule would not change our conclusions" regarding a settlement that was entered into before the 2018 Rule 23 amendment) (citing Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment (explaining that "[t]he goal of this amendment is not to displace" any of the factors historically considered in assessing settlement fairness, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal")). *See also Wilson v. Metals USA, Inc.*, No. 2:12-CV-00568-KJM-DB, 2021 WL 516585, at *3 (E.D. Cal. Feb. 11, 2021) ("the court draws on the Ninth Circuit's longstanding guidance as well as the Rule 23(e)(2) factors in determining whether the settlement is 'fair, reasonable, and adequate.'").

The traditional Ninth Circuit factors for evaluating a settlement include: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

9

offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement." *Villalobos v. Calandri*, No. CV12-2615 PSG (JEMX), 2016 WL 6901695, at *4 (C.D. Cal. Mar. 14, 2016) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). As set forth below, the relevant factors favor granting final approval to the Settlement.

## A. The Settlement Amount Is Substantial and Favors Final Approval.

The Ninth Circuit has previously noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. [A] proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved[.]" *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Estimates of a fair settlement figure are [to be] tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014). As set forth above and in Plaintiffs' Motion for Preliminary Approval (Doc. 20), the $7,950,000 Settlement Fund is substantial and will provide a significant percentage of the damages as calculated by the parties' actuaries.

The Plan of Allocation for the Actuarial Class Members results in a percentage of damages of approximately 67% of their maximum damages as computed by Plaintiffs' expert (before fees, costs and a case contribution award for Named Plaintiff). Martin 11/9 Decl. Exhibit A p. 5. However, because of the methodology differences between the Parties' experts, the allocation to the Actuarial Class represents approximately 86% of Actuarial Class Members' maximum potential damages as computed by Defendants' expert. *Id.* The Plan of Allocation applies a 20% discount for statute of limitations for any Class Member who retired on or before December 1, 2012 (which is six years prior to the

10

1  filing of Plaintiffs' Complaint). *Id.* This means that if the request for a Case Contribution
2  Award and the Fee Application is granted, Actuarial Class Members will receive an
3  average net Individual Settlement Award of between approximately 46% and 59% of their
4  total damages. Martin 11/9 Decl. ¶41

5        For the Suspension Class, there were fewer differences in methodology between the
6  Parties. The Suspension Class Members will receive a gross amount of between 84% to
7  97% of maximum damages, depending on the computations of Plaintiffs' or Defendants'
8  experts (before fees, costs and a case contribution award for Named Plaintiff). Martin 11/9
9  Decl. Exhibit A p. 6. The Plan of Allocation similarly applies a 20% discount for statute
10 of limitations for any Class Member who resumed receipt of benefits following a
11 suspension on or before December 1, 2012 (which is six years prior to the filing of
12 Plaintiffs' Complaint). *Id.* This means that if the request for a Case Contribution Award
13 and the Fee Application is granted, Suspension Class Members will receive an average net
14 Individual Settlement Award of between approximately 58% and 67% of their total
15 damages. Martin 11/9 Decl. ¶41.

16       The Settlement amount and the percentages of individual damages recoveries here
17 are substantial and fair, reasonable and adequate in light of the uncertainties of continued
18 litigation. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000),
19 as amended (June 19, 2000) (approving a settlement that was 42% of estimated damages
20 and stating that even using the objectors' damages estimates, a settlement of 14% would
21 be fair); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL
22 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (settlement of approximately 7.07% of the
23 maximum potential recovery "provides good value" and collecting cases with settlement
24 payments of between 1.5% and 8% of maximum potential recoveries); *Rosales v. El
25 Rancho Farms*, No. 1:12-CV-01934-AWI, 2015 WL 4460918, at *14 (E.D. Cal. July 21,
26 2015) (approving a settlement with a class payment that was roughly 25% of the maximum
27 potential recovery); *Rojas v. Zaninovich*, No. 1:09-CV-0705-AWI-JLT, 2015 WL
28 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement with a class payment

that was roughly 50% of the maximum potential recovery); *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving a settlement with a class payment of approximately 8% of the maximum potential recovery); *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24%); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25 to 35%). *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted).

**A.  Named Plaintiff and Class Counsel Have Adequately Represented the Class**

ERISA is a complex, demanding, and evolving area of the law requiring the devotion of significant resources both by the Parties and the Court. Mr. Koch and Class Counsel have pursued the claims vigorously and adequately since 2018 when Mr. Koch submitted an administrative claim to Defendants and the lawsuit was filed and in the Settlement.

As set forth above and in the accompanying Motion for a Case Contribution Award and for Attorneys' Fees and Costs, in order to agree to dismissal of the 2018 action, Plaintiff received the benefit of a tolling agreement for all putative class members and an agreement by Defendants to produce relevant documents and to engage in mediation on a class basis. Martin 11/9 Decl. ¶23 Thereafter Class Counsel undertook to obtain extensive documents and information from Defendants. *Id*. ¶¶24-27. Class Counsel reviewed Plan documents, notices, scanned copies of over 2,700 paper benefits files to determine which Plan participants were harmed by the claims asserted in the complaint and thereafter conducted an extensive analysis and engaged an expert actuary to conduct a detailed individual-by-individual analysis of the claims in the case and calculate potential damages. *Id.* The Parties and their experts exchanged extremely detailed analyses of methodology and calculations and had multiple calls and emails to debate the calculation methods and damages analyses

for the Class Members. *Id.*

As detailed in the accompanying Koch Decl. and Martin 11/9 Decl. and Motion for a Case Contribution Award and for Attorneys' Fees and Costs, the Named Plaintiff likewise represented the Class Members zealously and undertook risk and extensive work that benefited the Class Members. Martin 11/9 Decl. ¶¶35-37; Koch Decl. ¶18. The Named Plaintiff put the interests of the Class Members over his own personal interests by pursuing the claims and settlement on a class basis instead of just on an individual basis, which resulted in significant risk to his own claims and a lengthy delay in settling his own claims. Martin 11/9 Decl. ¶¶35-37; Koch Decl. ¶¶14-17. He performed extensive work including gathering documents and information, speaking to other putative Class Members, and regularly communicating with Class Counsel to further the litigation. Koch Decl. ¶18.

Class Counsel and the Named Plaintiff zealously pursued the claims and negotiated the Settlement Agreement and have more than adequately represented the interests of the Class Members.

**B.   The Risk, Expense, Complexity, and Duration of Further Litigation Favors Granting Approval of the Settlement**

There is substantial litigation risk if this case were to continue through discovery and a potential trial. No merits decisions have yet been made, but Defendants deny liability and stated that they would oppose class certification. Martin 11/9 Decl. ¶¶16, 19, 29. Defendants also contend that many Class Members' claims would be barred by the statute of limitations. *Id.* ¶29. The Settlement eliminates the risks and delay of trial and still provides a substantial percentage of maximum potential liability on a gross basis of 67%-86% (before fees, costs and a case contribution award for Named Plaintiff) and 84% to 97% of maximum damages for Suspension Class Members (again depending on the computations of Plaintiffs' or Defendants" experts) of the maximum "best-day" potential recovery as calculated by the Parties' experts. *Id.* ¶41.

The risks, delay, and expense that will be avoided by the Settlement are significant. If the Settlement is not approved, the lawsuit will need to recommence, and a substantial amount of additional work – primarily motion practice - will need to be done at a risk of

13

non-recovery if the Court were to rule against Named Plaintiff and the Class Members. A lawsuit could take years through summary judgment, a potential trial and a potential appeal. In addition to liability issues, the damage issues that must be determined are significant and even if liability is firmly established, the case would likely become a battle of the actuarial experts. This would entail significant additional expert expenses beyond the more than $84,000 that Class Counsel has incurred to date and thousands of hours of additional attorney and paralegal time. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1390 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("The uncertainty of victory and the certainty of ever-increasing costs, both monetary and otherwise, thus, validate the undertaking of serious settlement negotiations."); *In re Cobra Sexual Energy Sales Pracs. Litig.*, No. 2:13-CV-05942-AB-EX, 2021 WL 4535790, at *6 (C.D. Cal. Apr. 7, 2021) ("Here, the Settlement eliminates these risks by ensuring the Class a recovery that is "'certain and immediate, eliminating the risk that class members would be left without any recovery ... at all.'") (quoting *Graves v. United Indus. Corp.*, 2020 U.S. Dist. LEXIS 33781, at *21-22 (C.D. Cal. Feb. 24, 2020) (quoting *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010))).

The significant risks faced by the Classes with respect to class action certification also favor granting final approval. While Plaintiff believes he would ultimately prevail on a motion for class certification for the reasons set forth in the Motion for Preliminary Approval and Request for Certification of the Settlement Class, Defendants had indicated they planned to oppose certification. Martin 11/9 Decl. ¶29. Defendants maintained during the parties' mediation discussions that differences among Class Members could defeat certification. Defendants cited the fact that there were different predecessor plans and different amendments to those Plans at issue might defeat certification. Defendants also maintained that the statute of limitations issues might defeat certification also. While Plaintiff is confident that he would prevail on a class certification motion, because there is a risk that class members may not obtain certification and may not recover at all if the

classes were not certified, this factor weighs in favor of final approval of the Settlement. *See, e.g.*, *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification]. This factor therefore weighs in favor of final approval of the settlement."); *Catala v. Resurgent Cap. Servs. L.P.*, No. CIV.08CV2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) ("The avoidance of risk of maintaining class action certification throughout trial favors settlement of this action.").

**B. Class Counsel Had Sufficient Discovery to Reach an Informed Settlement Decision.**

As set forth above and in the Martin Decl., in the three years the claims were being pursued in this case, Class Counsel obtained over 136,000 pages of documents, including actuarial calculations and 2,700 scanned benefits files, plan documents, amendments, notices and summary plan descriptions. Martin 11/9 Decl. ¶26. Class Counsel engaged an expert actuary to extensively analyze damages issues and develop a Plan of Allocation. The parties had numerous calls and written communications. Martin 11/9 Decl. ¶39. Class Counsel had more than sufficient discovery and information to make an informed decision about the fairness, reasonableness and adequacy of the proposed Settlement. See, e.g., *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

**C.     The Settlement Was Negotiated by Highly Experienced Class Counsel Who View it as Fair, Reasonable and Adequate.**

As set forth in the Martin Declaration, Ms. Martin and the firm of Martin & Bonnett have extensive ERISA and class action experience. Martin 11/9 Decl. ¶¶3-10. Class Counsel believes the arms-length resolution of this vigorously contested case represents a fair and equitable resolution for the Settlement Class. Martin 11/9 Decl. ¶44. The recommendations of Class Counsel "should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). (citations omitted); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (finding the fact that experienced counsel approved the settlement after hard-fought negotiations is entitled to considerable weight). Additionally, courts may presume the fairness and adequacy of a

class settlement reached in an arm's-length negotiation among experienced, capable counsel, after meaningful discovery. Manual for Complex Litigation (3d ed.) §§ 30.42 (1995).

Class Counsel has carefully analyzed the issues and evidence, the risks to the Settlement Class in continuing the litigation, the total potential damages, and the benefits and detriments of the Settlement. Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Settlement is fair, reasonable, adequate, and in the best interests of Named Plaintiff and the Classes. Martin 11/9 Decl. ¶44.

### D. The Settlement Was Reached after Extensive, Adversarial Arms -Length, Negotiations, and is not a Product of Collusion

The Parties' Settlement was arrived at after a lengthy period of negotiations with an experienced class action ERISA mediator. The results achieved attest to this fact. The lack of any collusion is also evidenced by the fact that when settlement discussions stalled in late 2020, Named Plaintiff refiled this suit. While the case ultimately settled after that, it did so through additional adversarial negotiations.

Based on the fact that the Settlement was achieved through an arms-length mediation with an experienced mediator with no collusion between the Parties, it is afforded a presumption of fairness. *Corson v. Toyota Motor Sales, USA, Inc.*, No. CV128499JGBVBKX, 2016 WL 1375838, at *7 (C.D. Cal. Apr. 4, 2016) (*citing* 4 Newberg on Class Actions § 11.41 (4th ed. 2013)). As the Court noted in its Order granting Preliminary Approval, there appeared to be no collusion in this arms-length Settlement. Doc. 29, at 11-13.

### G. The Reaction of Class Members Favors Final Approval of the Settlement.

Defendants mailed the personalized Class Notices to all Class Members on October 7 202. See Declaration of Bea Sainz ¶3. Of those Notices, 16 were returned in the mail. *Id.* New addresses have been located for all but two of these Class Members and attempts are being made to locate those Class Members. *Id.* All other Notices for Class Members whose Notices were returned have been remailed. Some of these Class Members are now deceased

1  and Notices have now been mailed to their beneficiaries. *Id.*

2  The Class Notice described in plain language the terms of the Settlement, with personalized estimates of individual Settlement Awards, how those amounts were calculated based upon the Plan of Allocation, the considerations leading Class Counsel to conclude the Settlement is fair and adequate, the percentage and exact amount of attorneys' fees Class Counsel is seeking, along with the requested service payment and approximate amount of costs sought, the procedure for objecting to the Settlement, and the date and location of the Final Fairness Hearing. See Exhibit A to Settlement Agreement, Doc. 20-2 at pages 31-50 of 59. The Notice also contains Class Counsel's contact information. *Id.*

Although the time to object and opt out has not yet passed, to date only one Class Member has opted out of this Action, (Doc. 30), and no Class Member has objected. Martin 11/9 Decl. ¶45-46. Class Counsel has spoken to more than a dozen Class Members and their reaction has been highly favorable. These Class Members (who are retirees on fixed incomes) have expressed their gratitude and shock at the substantial Individual Settlement Awards they never expected. *Id.* This is a further factor that the Settlement merits final approval. *See Relente v. Viator, Inc.*, No. 12-CV-05868-JD, 2015 WL 2089178, at *2 (N.D. Cal. May 4, 2015) (granting final approval after considering, *inter alia*, that no class members had objected to settlement); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (noting absence of objections as "compelling evidence" that settlement is "fair, just, reasonable, and adequate").

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Final Approval of the Settlement and enter the accompanying proposed final approval order and judgment submitted herewith

Respectfully Submitted this 9th day of November 2021.

**MARTIN & BONNETT, P.L.L.C.**
By: s/Susan Martin
Susan Martin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jennifer Kroll
Michael M. Licata
4647 N. 32nd St., Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900

*Attorneys for Plaintiff and the Classes*