Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff and the Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Koch, | Case No.: 2:20-cv-02187-DJH |
| Plaintiff, on behalf of himself and all others similarly situated | **PLAINTIFF'S MOTION FOR A CASE CONTRIBUTION AWARD AND ATTORNEYS' FEES AND COSTS** |
| v. | |
| Desert States Employers & UFCW Unions Pension Plan, et. al, | |
| Defendants. | |

Pursuant to the Court's Order dated September 23, 2021 (Doc. 29), Fed. R. Civ. P. 23(h), Fed. R. Civ. P. 54(d)(2), LRCiv. 54.2, and the Settlement Agreement, Plaintiff hereby moves for approval of a case contribution award to Named Plaintiff in the amount of $20,000 for the substantial and significant services he provided to the classes that helped achieve a settlement in this case. Plaintiff also moves for an award of attorneys' fees in the amount of 30% of the Settlement Fund ($2,385,000.00) and out of pocket costs and expense reimbursement of $89,892.96[1] for a total of $2,474,892.96 in attorneys' fees

---

[1] The costs and expense reimbursement requested is $17,871 less than the $107,764 stated in the Notice and Preliminary Approval Motion due to final actuarial costs being less than anticipated. This difference has been added to Class Members' recoveries slightly increases

1   and costs to be paid out of the Settlement Fund. This motion is supported by the
2   Declaration of Named Plaintiff Robert Koch ("Koch Decl."), the Declaration of Susan
3   Martin in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and
4   Plaintiffs' Motion for a Case Contribution Award and Attorneys' Fees and Costs ("Martin
5   11/9 Decl.") and exhibits thereto, and the record before this Court.

6   **I.    INTRODUCTION**

7          Plaintiff provided a detailed summary of the claims and allegations in the case in
8   the Motion for Preliminary Approval, which Plaintiff incorporates herein by reference.
9   Doc. 20. On September 23, 2021, in a comprehensive order analyzing the settlement,
10  claims and classes, this Court granted preliminary approval to the Settlement, certified the
11  Classes and directed notice to be provided to the Class Members. Doc. 29. The Final
12  Approval Hearing is scheduled for November 30, 2021. The Court noted in its preliminary
13  approval order that "While not unreasonable on its face, at the hearing, the parties should
14  be prepared to explain efforts taken as Proposed Class representatives and establish the
15  reasonableness of the [Case Contribution and attorneys' fees] awards, including any actual
16  damages sustained as a result of Defendants' actions." Doc. 29, at 13-14. Plaintiff herein
17  addresses the reasonableness of the requested Case Contribution Award and attorneys' fee
18  award. Class Counsel will be prepared to further address the reasonableness of these
19  requests at the Final Fairness Hearing.

20  **II.  THE SETTLEMENT**

21         The Settlement represents an excellent result. Defendant Plan has agreed to pay a
22  total of $7,950,000 (with no reversion) to a Settlement Fund from which the 335 retiree or
23  beneficiary Class Members will receive Individual Settlement Awards proportionately
24  allocated based on uniform criteria pursuant to the proposed Plan of Allocation.

25         Mr. Koch and Class Counsel pursued the claims and settlement with painstaking

26  _____

27  the amounts Class Members will receive. Martin 11/9 Decl. ¶2. An updated Plan of
    Allocation reflecting these revisions is being filed as Exhibit A to the Martin 11/9 Decl.
28  All Individual Settlement Amounts paid to Class Members will be slightly larger than the
    amounts set forth in the individualized notices to Class Members. Martin 11/9 Decl. ¶2.

1  and persistent vigor. As set forth above and in the Martin 11/9 Decl. ¶23, in order to agree

2  to dismissal of the 2018 action, Plaintiff obtained the benefit of a tolling agreement for all

3  putative class members and an agreement by Defendants to produce relevant documents

4  and to engage in mediation on a class basis. *Id.*

5       When Plaintiff began the discovery process to prepare for mediation, Defendants

6  maintained they were doing nothing wrong. *Id.* ¶24. They asserted that the fact that Mr.

7  Koch did not receive an actuarial increase was somehow an idiosyncratic error that only

8  affected Mr. Koch and was not a class-wide issue. *Id.* However, Plaintiff pursued this claim

9  and demanded more information, initially agreeing to review a sample of the potential class

10 and then, upon seeing that the failure to provide an actuarial increase affected more than

11 Mr. Koch, Plaintiff demanded more information. *Id.* Defendants asserted that they did not

12 maintain electronic benefits files covering the relevant years and information. *Id.* ¶25.

13 Accordingly, Defendants eventually produced hard copy benefits files that they scanned

14 over a period of many months together with some records of calculations. *Id.* These files

15 and records revealed that although Defendants were regularly calculating actuarial

16 increases for *some* Plan participants who retired after normal retirement age, they failed to

17 calculate and provide actuarial increases for a significant number of Plan participants. *Id.*

18 The records showed that if a participant retired after normal retirement age and had not

19 engaged in prohibited employment between the time they reached normal retirement age

20 and the time started collecting retirement benefits, Defendants were (for the most part),

21 providing actuarial increases. *Id.* However, Defendants were uniformly ***not*** calculating or

22 providing actuarial increases for any Plan participant like Mr. Koch who worked between

23 reaching normal retirement age and the time they began collecting retirement benefits even

24 in situations where Defendants agreed that the Plan document provided that none or only

25 a portion of the participants' benefits were subject to suspension under the Plan's rules. *Id.*

26 As it turns out, in addition to Mr. Koch, the Plan failed to calculate and pay actuarial

27 increases or retroactive benefits with interest for 287 individuals who retired following

28 their Normal Retirement Date (excluding the one participant who opted out of this action).

1   Martin 11/9 Decl. ¶¶25, 42, 45. These individuals are Actuarial Class Members. *Id.* ¶42.

2         In addition to the Actuarial Class Members, there are also 52 Suspension Class

3   Members who, Plaintiff alleges were harmed by the imposition of amendments that

4   expanded the Plan's post-retirement employment prohibitions. See Doc. 20, at pp. 5-7

5   (describing amendments and claims relevant to Suspension Class Members). These

6   individuals were also identified by a participant-by-participant review of Defendants'

7   benefits files Martin 11/9 Decl. ¶26.

8         Class Counsel undertook at great time and expense, the review of scanned hard copy

9   benefit files and Mr. Koch endeavored to speak with and obtain documents from other

10   putative class members and searched his own records and documents. Martin 11/9 Decl.

11   ¶¶26, 34; Koch Decl. ¶18. Class Counsel reviewed Plan documents, notices and

12   summaries. Martin 11/9 Decl. ¶¶26. Class Counsel also reviewed the records of benefit

13   calculations produced by Defendants together with over 2,700 individual participants'

14   benefits files to identify the Plan participants who were harmed by improper benefit

15   suspensions and failure to provide actuarial adjustments. *Id.* Class Counsel conducted an

16   extensive individual-by-individual analysis of the claims in the case. *Id.* Plaintiff engaged

17   an expert actuary to conduct a detailed analysis of claims, and to calculate putative class

18   member damages. *Id.* ¶27. Defendants also engaged an actuary and performed alternative

19   calculations including the asserted impact of numerous claimed defenses. *Id.* These expert

20   analyses were exchanged by the Parties and phone conferences were held to review and

21   identify the disputes between the parties with respect to claims, defenses and damages. *Id.*

22         Thereafter, settlement discussions stalled. *Id.* ¶28. Despite the risk and delay to

23   himself, Mr. Koch was willing to persist with efforts on behalf of the class and reject

24   exploration of settlement on an individual basis that would have precluded him from

25   continuing to seek class relief. *Id.* ¶36; Koch Decl. ¶17. Instead, Plaintiff recommenced

26   this class action lawsuit by filing the instant case with the Court on November 13, 2020.

27   Martin 11/9 Decl. ¶28.

28         On January 20, 2021, the Parties engaged in a full day mediation but the case did

not settle. Martin 11/9 Decl. ¶¶29-30. Nevertheless, the Parties continued to engage in settlement discussions with the mediator. *Id.* ¶30. Those discussions resulted in a proposal from the Mediator that set forth a total settlement amount of $7,950,000 and specified that of that amount, $6,250,000 should be allocated to the Actuarial Class and $1,700,000 should be allocated to the Suspension Class. *Id.* ¶31. Both of these allocations were proportional to the relative size of the Classes, the strengths and weaknesses of the claims and the damages each side contended were or could be due if litigation continued. *Id.* The Parties executed the Settlement Agreement on June 4, 2021. Doc. 20-2.

**III. REACTION TO THE SETTLEMENT**

Class Member reaction to the settlement has been extremely positive. Martin 11/9 Decl. ¶¶45-46. Not a single Class Member has objected to date. Only one Class Member has opted out.[2] *Id.* More than a dozen class members have called Class Counsel to ask questions about the Settlement. *Id.* ¶46. Most Class Members called because they were extremely surprised to hear of the Settlement. *Id.* These Class Members have been uniformly pleased with the settlement and have expressed their gratitude to Class Counsel and to Mr. Koch for their work in securing the Settlement. *Id.*

**IV. THE REQUESTED CASE CONTRIBUTION AWARD IS FAIR AND REASONABLE**

Named Plaintiff seeks a Case Contribution Award of $20,000 for his services to the Classes that helped achieve the Settlement. This amount was disclosed in the Notice that was provided to Class Members. *See* Doc. 20-2. Case contribution awards (also called service or incentive awards) are permitted "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Factors the courts employ to assess whether service awards are warranted and reasonable include: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the

---

[2] The person opting out had a very small pension benefit due to a short period of service under the Plan and was due to receive the minimum settlement benefit of $100.

degree to which the class has benefitted from those actions; (3) the amount of time and effort the plaintiff expended in pursuing the litigation; (4) the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; and (5) the relationship between the service award, the total fund, and the amounts received by the individual claimants. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *McNeal v. RCM Techs. (USA), Inc.*, No. 2:16-CV-05170-ODW-SS, 2017 WL 2974918, at *1 (C.D. Cal. July 12, 2017).

These factors support the reasonableness of the Case Contribution Award. As explained in his declaration, Mr. Koch has engaged in dedicated, difficult work over the past three years to protect the interests of the classes, including investing considerable time and energy to locate relevant documents, communicating regularly with counsel about the case both by phone and by email, making efforts to find and communicate with other putative class members, discussing the case with putative class members, making other efforts to try to find relevant documents and information and, actively participating in analysis of the claims and defenses for purposes of settlement. Koch Decl. ¶18. These efforts were significant undertakings for the Plaintiff who continued working throughout the lawsuit and settlement efforts. *Id.* ¶¶5, 17, 18. In addition Mr. Koch agreed to pursue this action on behalf of the Class Members. When class settlement discussions broke down and at great risk to himself and despite the further inevitable delay in resolution of his claims, he also supported re-filing the complaint as a class action in 2020. *Id.* ¶¶12, 13, 14, 17; Martin 11/9 Decl. ¶¶35-36. Named Plaintiff estimates that he spent well over 100 hours in the three years since 2018 that he spent pursuing his claims and working with counsel to achieve these results. Koch Decl. ¶18.

There is no question that the Class Members benefitted significantly from the efforts of the Named Plaintiff. The Named Plaintiff put aside his own personal interests in a case that could likely been settled earlier in the absence of a class in order to benefit the interests of other participants like himself. Koch Decl. ¶¶12, 13, 14, 17; Martin 11/9 Decl. ¶35-36. If Plaintiff had lost interest or given up, the results for the class would have been

compromised. His persistence (along with dedicated efforts of his attorneys) resulted in a Settlement that will significantly benefit 334 other grocery store retirees and beneficiaries.

The fact that the Named Plaintiff also had a reasonable fear of retaliation and still agreed to bring this lawsuit as a class action is also a factor that supports the request for a Case Contribution Award. Koch Decl. ¶15; Martin 11/9 Decl. ¶37. Named Plaintiff publicly stepped forward to file a  class action suit seeking benefits based on his prior grocery store employment while he continued to work at a different grocery store in the same geographic area. Koch Decl. ¶15. Although it is unlawful to discriminate against Plan participants who assert their rights under ERISA, many Plan participants have reasonable fears that they may nonetheless face retaliation for engaging in protected activity. Some meritorious suits are never brought because individual workers will not take the risks that the Named Plaintiff did. Martin 11/9 Decl. ¶37. It is important to ERISA's remedial purposes that individuals who assume such risks to vindicate the rights of the class be compensated for those risks.

The fact that no Class Member has objected to either the Settlement, the fees, or the amount of the Case Contribution Award also supports granting the Case Contribution Award. Martin 11/9 Decl. ¶45. Class Notices were sent to Class Members specifically informing them that Named Plaintiff would seek up to $20,000 in a Case Contribution Award and how to object to that award. *See* Doc 20-2 pp. 47-48 of 59. Since the Class Members themselves are the ones most familiar with the risks that the Named Plaintiff took in coming forward to represent the Classes, and the benefits that the Classes received as a result of those efforts, the absence of objections supports the awards.

Further, the requested Plaintiff's Case Contribution Award does not dilute the Settlement Fund. Named Plaintiff's Case Contribution Award represents a very small proportion of the Settlement Fund; it is .25%. Martin 11/9 Decl. ¶¶ 31-32, 43. There are more than 80 Class Members receiving more than the amount of Mr. Koch's requested Case Contribution Award. Martin Decl. ¶42. Suspension Class Members are receiving an average Individual Settlement Award of  $22,434 and Actuarial Class Members receiving

1    an average of $14,943 each. *Id.*

2        In addition to Mr. Koch's individual share of the Settlement Fund of $95,892.21,

3    which was calculated under the same formula as the rest of the Class Members' settlement

4    benefits (*id.* ¶43) if the Case Contribution Award is approved, Mr. Koch will receive a total

5    of $115,892.21, which is approximately only 1.4% of the Settlement Fund of $7,950,000.

6    Other Settlement Class Members are receiving more than this amount in Settlement

7    Benefits. *Id.* ¶42. Courts regularly award service payments in this range and higher,

8    particularly, as here, where the awards will not dilute the fund and are not excessive in light

9    of the awards to class members. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

10   934, 948 (9th Cir. 2015) (approving $45,000 in service awards); *Carlin v. DairyAmerica,*

11   *Inc.*, 380 F. Supp. 3d 998 (E.D. Cal. 2019) ($45,000 service awards to four class

12   representatives); *Cilluffo v. Central Refrigerated Services, Inc.,* ED12cv886 VAP (OPx) at

13   19-22 (C.D. Cal. Order Apr. 3, 2018) (service awards of $50,000); *Nitsch v. DreamWorks*

14   *Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *14 (N.D. Cal. June

15   5, 2017) (service awards of $80,000 and $20,000); *Beaver v. Tarsadia Hotels*, No. 11-CV-

16   01842-GPC-KSC, 2017 WL 4310707, at *7–8 (S.D. Cal. Sept. 28, 2017) ($50,000 service

17   awards); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299–300 (N.D. Cal. 1995)

18   (same); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-CV-1078, Dkt. 713 at

19   2, 8 (E.D. Pa. July 14, 2014) (service awards of $150,000 and $75); *In re Titanium Dioxide*

20   *Antitrust Litig.,* No. 10cv318 RDB, 2013 WL 6577029 at *1 (D. Md. Dec. 12, 2013)

21   (service award of $125,000 to lead class representative); *In re High-Tech Emp. Antitrust*

22   *Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015)

23   ($80,000 and $120,000 service awards);

24       Named Plaintiff respectfully submits that the Case Contribution Award of $20,000

25   is reasonable in light of the circumstances of this case when viewed under the factors

26   regularly employed for determining the reasonableness of such awards.

27   **V.  APPROVAL OF CLASS COUNSEL'S FEE REQUEST IS WARRANTED**

28       When a settlement generates a common fund for the benefit of class members,

8

attorneys' fees may be awarded to class counsel using either the lodestar method or the percentage of the fund method. The Ninth Circuit has held that "it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). *See also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."). Because, *inter alia*, the benefit to the class is easily quantifiable in common fund cases, the percentage of the fund method for calculating fees is typically used. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

## A. Exceptional Results Were Achieved.

The $7.95 million fund for the benefit of 335 Class Members represents an extraordinary result for the Classes given the risks and likely duration of further litigation. The Settlement Agreement provides the Individual Settlement Amounts are automatically paid to Class Members without need to do anything and there is no reversion to Defendants. Doc. 20-2 ¶2.02. Class Members are receiving settlement benefits even if they retired and began collecting benefits long before the case began – some with a very modest statute of limitations discount. They are receiving the settlement benefits calculated with an exceptionally high interest rate (7.5%) on back benefits, which also serves in a practical manner to offset the modest statute of limitations discount for many Class Members, some of whom retired long before the case began. Updated Plan of Allocation pp. 5-6 (Ex. A to Martin 11/9 Decl.). The size of the Fund is an exceptional result.

## B. This Case Was Risky and Complex

There can be no question that this case was risky for Class Counsel. Class Counsel's firm is a small firm. Martin 11/9 Decl. ¶15. ERISA pension cases like this one are complex and require an understanding and the ability to convey to a Court the intricacies of a statute that the Supreme Court has described as a "'comprehensive and reticulated statute,' the

product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Associates*, 508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp*, 446 U.S. 359, 361 (1980)). *See* Martin 11/9 Decl. ¶12-13 and Ex. D ¶¶10-12 and Ex. E ¶ 5 (declarations from ERISA attorneys Ronald Kilgard and Eli Gottesdiener).

Taking on a case like this required a large investment of the firm's time and resources and, as a consequence, the risks Class Counsel undertook were large. *See* Martin 11/9 Decl. ¶¶ 9, 14-16, 18-19. As set forth above, Defendants' data was not electronically maintained. Class Counsel hired a paralegal/data specialist just for this case in order to assist with the large volume of scanned paper copies of pension benefits information that needed to be catalogued, and then analyzed and conveyed to the attorneys and subsequently to Plaintiff's actuary. Martin 11/9 Decl. ¶¶ 9, 15, 25, 26. Class Counsel spent a large amount of time working on this case and agreed to do this work out of Court to reach settlement, knowing that while the chances of settlement might be higher by doing so, Plaintiff would likely have to face years of litigation if a settlement was not ultimately achieved. Defendants denied and continue to deny that they violated ERISA or the terms of the Plan. Defendants asserted a number of defenses including, *inter alia*, the statute of limitations, that if accepted, would have barred recovery for many of the Class members and a significant part of the claims. . *Id*. ¶29. Mr. Koch and the putative class members faced a number of risks including, but not limited to, risks related to establishing liability under complex ERISA statutory and Plan claims, the risk that a class might not be certified, risks associated with the statute of limitations and similar time-based defenses, and risks associated with determining damages which presented a myriad of issues concerning the appropriate methodology to calculate losses and a multiple of potential remedies even if Named Plaintiff were to prevail on liability. *Id.* ¶¶16-19.

The risks undertaken by Class Counsel weigh heavily in favor of adjusting the benchmark upward here. In sum, the complexity of the case and the risks and expense undertaken by Class Counsel in pursuing the claims diligently fully support the requested

fee. *See, e.g.*, *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2019 WL 1170487, at *6 (N.D. Cal. Mar. 13, 2019) (awarding 27.2% of recovery ($3,000,000) as attorneys' fee for approximately 1,100 hours of legal time resulting in 3.86 lodestar multiplier: "[t]he risk of litigation, also supports granting the requested fee. …Class Members face substantial risk that further litigation might not result in any recovery at all,…").

**C.    Counsel are Skilled, Experienced and Provided Excellent Representation**

As set forth above, the subject matter of this case is highly complex. Class Counsel was required to have extensive knowledge of technical ERISA and Internal Revenue Code provisions and regulatory requirements, knowledge regarding the requirements for pension plan administration and reporting, an understanding of various actuarial concepts, practices, methodologies and formulas used in calculating pension benefits in defined benefit pension plans and knowledge of the ever-evolving case law under ERISA. *See, e.g.*, *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (stating in discussion of risks in ERISA litigation and awarding fees of one-third of the common fund: "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation."). Martin 11/9 Decl. ¶12-13 and Ex. D ¶¶10-12 and Ex. E ¶ 5 (Declarations of Ronald Kilgard and Eli Gottesdiener).

Martin & Bonnett is one of only a small number of firms with the skills, ability and willingness to handle this type of complex ERISA litigation on a contingency basis. Martin 11/9 Decl. ¶13; Martin 11/9 Decl Ex. D ¶ 12; Martin 11/9 Decl Ex. E ¶6. ERISA plan defendants are often well funded, have insurance coverage to pay for defense of the claims, and retain large ERISA defense counsel firms with access to seemingly unlimited resources. Martin 11/9 Decl. ¶21. This case required Class Counsel to expend more than $89,000, most of which was the substantial expense of engaging an actuarial expert to produce a complete a damages analysis, analyze and engage in discussions with Defendants and their actuary regarding Defendants' own damages analysis (which was significantly lower than Plaintiff's summary), and prepare for and attend and participate in the complex and protracted settlement discussions undertaken by the parties. *Id.* ¶¶ 18,19, 47 and

Exhibit B. *See, e.g.*, *Phillips v. Mar. Ass'n, I.L.A. Loc. Pension Plan*, 198 F. Supp. 2d 838, 848 (E.D. Tex. 2002) ("it would be difficult to get competent lawyers to take on extensive ERISA litigation and pursue it over the course of several years if they were not compensated in a manner commensurate with the task and the risk").

The work performed in this case was extensive and required a great deal of skill. Class Counsel worked on this matter for three years. Class Counsel undertook to obtain documents from Defendants very early and zealously, ensuring that Plaintiff received documents necessary to analyze claims and defenses, class certification, and damages. There were numerous conferences and communications necessary in order to get the documents and information Plaintiff needed. Martin 11/9 Decl. ¶¶22-31. The parties had several disputes about what was needed but resolved those disputes outside of the litigation process with significant effort. The discovery undertaken by Plaintiff resulted in the production and exchange of more than 136,000 pages of documents and files, and multiple expert damages calculations. *Id*. ¶¶26-27. In addition to seeking and obtaining document discovery necessary, Class Counsel obtained the historical and other information Class Counsel needed. *Id.* ¶¶22-31

Class Counsel also worked extensively with an expert witness actuary to analyze claims and damages, to determine each individual Class Member's damages under various damage models and to develop the Plan of Allocation and calculate Individual Settlement Awards. *Id.* ¶27. Defendants retained their own actuarial expert witness, who asserted that there were no damages available or that they were very minimal. *Id.* ¶¶18, 27/ When negotiations stalled, Plaintiff filed again in 2020. *Id.* ¶28. A great deal of research and investigation was needed to analyze the claims and commence the lawsuit. Class Counsel also assisted Mr. Koch in his efforts to obtain his benefits and pertinent documents prior to the litigation. *Id.* ¶22. Prior to bringing this case and during the past three years, Class Counsel performed a substantial amount of research and conducted an extensive investigation. See Martin 11/9 Decl. Exhibit C. The skill and experience required to achieve the result here is substantial. It weighs heavily in favor of the requested fee award.

1     **D.      The Contingent Nature of the Fee**

2          Martin & Bonnett is a small firm that agreed to take this case on a contingency basis

3     where the Plaintiff agreed to pay 1/3 of all amounts recovered for the litigation in the

4     District Court and 40% in the event of an appeal. Martin 11/9 Decl. ¶14. Class Counsel

5     also agreed to advance all expenses. *Id.* Many common fund cases are litigated on a

6     contingent-fee basis. If Plaintiff had not been able to achieve a settlement and had lost the

7     case, Plaintiff's Counsel would not have recovered any fees, would have foregone other

8     potentially profitable litigation, and would have lost any costs advanced. *See Vizcaino v.*

9     *Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) ("In common fund cases, 'attorneys

10    whose compensation depends on their winning the case [] must make up in compensation

11    in the cases they win for the lack of compensation in the cases they lose") (citation omitted).

12         Class Counsel also had to carefully review the workload in this case and at times

13    turn down other work to ensure that there were sufficient resources devoted to this matter.

14    Martin 11/9 Decl. ¶20. In addition to the significant outlay of resources including in in

15    hiring additional paralegal personnel, engaging a skilled pension actuary and paying one

16    half the fees of the mediator, Class Counsel took the risk that there would be no recovery

17    even as the press of work in this matter precluded undertaking other matters. *Id.* ¶¶9, 14-

18    21.

19         "The substantial amount of resources expended on a case where Counsel may have

20    recovered nothing also weighs in favor of finding that requested one-third fee is

21    appropriate." *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG

22    (JCX), 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (citing *Boyd v. Bank of Am.*

23    *Corp.*, No. SACV13-0561-DOC (JPRx), 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18,

24    2014) (approving a 33% award of a $5.8 million common fund where class counsel spent

25    over a year and a half litigating the case on a contingency basis) and *Weeks v. Kellogg Co.*,

26    No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *37 (C.D. Cal. Nov. 23, 2013)

27    (approving attorneys' fee of 30% of a $2.5 million settlement where litigation had been

28    pending for two years)); *Hightower v. JPMorgan Chase Bank, N.A.*, No.

CV111802PSGPLAX, 2015 WL 9664959, at *10 (C.D. Cal. Aug. 4, 2015) ("the risk of further litigation, coupled with the contingent basis on which Class Counsel took this case, supports Plaintiffs' fee request"). Attorneys' fees equal to 30 % of the Settlement Fund are reasonable here. Plaintiff explicitly agreed to a higher 1/3 contingency fee, in his fee agreement. Given the complexities and difficulties of this case, attorney's fees of 30% or even more represents a fair and appropriate contingency. *Ambrosino v. Home Depot U.S.A, Inc.*, No. 11CV1319 L MDD, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding 33.3% attorneys' fees reasonable in a settlement where "each plaintiff has approved this amount").

Awards in far less complex cases support the requested percentage fee here. *See Quintana v. HealthPlanOne LLC*, No. CV-18-02169-PHX-RM, 2019 WL 3342339, at *7 (D. Ariz. July 25, 2019) (awarding common fund fee of 30% in FLSA case); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding common fund fee of 33%—$48 million); *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (awarding 30% of $6.5 million settlement as "well within the range routinely approved in such cases); *Goodwin v. Citywide Home Loans, Inc.*, No. SACV14866JLSJCGX, 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015) (awarding fees of one-third of the total settlement amount in FLSA and Cal. Lab. Code common fund case); *Lee v. JPMorgan Chase & Co.*, No. SACV13511JLSJPRX, 2015 WL 12711659, at *9 (C.D. Cal. Apr. 28, 2015) (same); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (same); *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *3 (N.D. Cal. July 18, 2013) (awarding 30%).

**E.     The Views of the Class Members**

It is also appropriate for the Court to consider the views of the class members in evaluating a common fund fee request. *See In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) ("The reaction of the class may also be a determining factor in the determining the fee award."); *In re Omnivision*

*Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (same).Thus far, out of the 335 Class Members, all of whom were informed in the Class Notice of Plaintiff's intent to request a 30% common fund attorneys' fee, not a single Class Member objected to the fee and Class Counsel has received numerous calls expressing extreme gratitude. Martin 11/9 Decl. ¶¶45-46. These facts weigh heavily in favor of the reasonableness of the requested fee. *In re Nexus 6P Products Liability Litigation*, 2019 WL 6622842, at *13 ("The fact that no objections have been received supports an upward adjustment."); *Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) ( noting "the fact that no class member has objected to the proposed award.").

**F.     The Lodestar Cross-Check Supports the Fee Request**

While "[a] lodestar cross-check is not required in this Circuit, and in some cases is not a useful reference point", a lodestar cross-check also supports granting the requested fees. *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008). *See also Bendon v. DTG Operations, Inc.*, No. EDCV160861FMOAGRX, 2018 WL 4976511, at *8 (C.D. Cal. Aug. 22, 2018) (cross-check discretionary). Class Counsel has expended more than 1,1800 hours of attorney and paralegal time. Martin 11/9 Decl. ¶49 & Ex. C.[3] Class Counsel requests $2,385,000 in fees which based on the work still to be done including consulting with Defendants about class member and payment issues, monitoring and ensuring payments in accordance with the Settlement, attending the final fairness hearing and responding to Class Member inquiries, is anticipated to result in a lodestar multiplier of approximately 3.6. Martin 11/9 Decl. ¶54. This multiplier is well within the normal range applied in similar cases and is fair, reasonable and warranted given the factors the courts utilize. *Id.* ¶52. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 654 (9th Cir. 2019) (multiplier of 3.66; *Craft*, 624 F. Supp. 2d at 1125 (approving multiplier of 5.2 and stating that "there is ample authority

---

[3]The printout of contemporaneous time records for all of the attorneys who worked on this action describe the work performed in detail and the time spent performing the tasks. Martin 11/9 Decl. Ex. C.  As set forth in the Martin 11/9 Decl. ¶48, Class Counsel has exercised billing discretion and removed any excessive, redundant, or unnecessary time.

for such awards resulting in multipliers in this range or higher" and collecting cases awarding common fund fees with lodestar multipliers well above the multiplier here); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (courts regularly award lodestar multipliers of up to 8).

The hourly rates used in calculating the lodestar amount are similarly reasonable in light of Class Counsel's extensive experience, skill and rates in similar cases. They range from $825 for senior partner Susan Martin who has been litigating ERISA pension cases since 1977, $690 for partner Jennifer Kroll who has 20 years of ERISA litigation experience, $550 to $347 for associates depending on their experience, $225 for the data analyst paralegal hired just for this case to $190 for paralegals. Martin 11/9 Decl. ¶¶ 3, 6, 49-50. Counsel have also used similar rates for lodestar cross-check purposes in *Van Dusen v. Swift, No.* CV 10-899-PHX-JWS (D. Ariz.), in 2020, some of which were increased slightly for payment anticipated in 2022. Martin 11/9 Decl. ¶52. These rates are also consistent with or below the rates of other experienced ERISA pension practitioners. Martin 11/9 Decl ¶¶51-53, Ex. D ¶14, Ex. E ¶7. Similar rates were also utilized for Class Counsel's lodestar cross-check in a case in the District of Nevada in 2018 (increased by between 5 and 15% to account for the elapsed three years since that award and anticipated payment in 2022). *Allbaugh v Cal. Field Ironworkers Pension Trust*, No. 2:12-cv-00561-JAD-GWF, ECF No. 245 (D. Nev. July 19, 2018).

Cases support the fact that Class Counsel's rates are reasonable and consistent with awards in other cases with similar class claims and years of experience of the attorneys involved. *See, e.g*., *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (noting in ERISA case "reasonable rates ranging from $600 to $875 per hour for attorneys with more than 10 years of experience, $325 to $575 per hour for attorneys with 10 years or less experience, and $250 per hour for paralegals and clerks"); *Downey Surgical Clinic, Inc.*, 2016 WL 5938722, at *12 (approving $720 hourly rate in 2016 for partners with 21 years of experience); *Pomerleau v. Health Net of California, Inc.*, No. CV 11-01654 DDP FMOX, 2012 WL

5829850, at *5 (C.D. Cal. Nov. 15, 2012) ($600 per hour was a reasonable rate in 2011 for an attorney with 15 years of ERISA experience); *Dine v. Metro. Life Ins. Co.*, No. CV 05-3773 RSWL PLAX, 2011 WL 6131312, at *3 (C.D. Cal. Dec. 9, 2011) ($600 per hour was a reasonable rate in 2011 for two partners with 29 years of experience (and 15 years of experience focusing on ERISA cases), $500 per hour was reasonable for Senior Associates with 14-15 years of experience, and $175 per hour was reasonable for the firm's paralegals). The requested rates are commensurate with commensurate with the prevailing national rates for experienced ERISA class action attorneys. *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) (finding attorneys' rates were reasonable because "ERISA cases involve a national standard").

**IV. CLASS COUNSEL'S EXPENSES ARE REASONABLE**

Class Counsel seeks $89,892.96 in litigation expenses including for expert witness fees, mediation services, and various other expenses for items such as legal research, postage, and filing fees. Pursuant to Local Rule 54-14(b)(1), an itemization of all of the costs sought with invoices where available is attached to the Martin 11/9 Decl. at Ex. B. These expenses are recoverable. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorney may usually recover expenses normally be charged to a fee paying client).

**VI. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to approve a Case Contribution Award to Named Plaintiff in the amount of $20,000 and an award of attorneys' fees in the amount of 30% of the Settlement Fund ($2,385,000.00) and out of pocket costs and expenses of $89,892.96 for a total of $2,474,892.96 in fees and costs to be paid out of the Settlement Fund.

Respectfully submitted this 9th day of November 2021.

**MARTIN & BONNETT, P.L.L.C.**
By: s/Susan Martin
    Susan Martin
    Jennifer Kroll
    Michael M. Licata
    4647 N. 32nd St., Suite 185

1

2

Phoenix, Arizona 85018
Telephone: (602) 240-6900

3

*Attorneys for Plaintiff and the Classes*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28