**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Koch, | No. CV-20-02187-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Desert States Employers & UFCW Unions Pension Plan, et al., | |
| Defendants. | |

On September 23, 2021, this Court preliminarily approved a Class Action Settlement ("Settlement"). (*See* Doc. 29). Pursuant to that Order, on November 30, 2021, this Court conducted a Fairness Hearing where it considered "Plaintiff's Motion for Final Approval of Class Action Settlement Agreement" (Doc. 32). Also before the Court is "Plaintiff's Motion for a Case Contribution Award and Attorneys' Fees, Costs" ("Plaintiff's Motion for Attorneys' Fees") (Doc. 33). Both motions are supported by the Declaration of Named Plaintiff Robert Koch ("Koch Decl.") (Doc. 34), the Declaration of Bea Sainz ("Sainz Decl."), the Declaration of Plaintiff's counsel Susan Martin ("Martin Decl.") (Doc. 36), and accompanying exhibits. The Court took both motions under further advisement and now issues its respective rulings.

## I.    Motion for Final Approval of Class Action Settlement Agreement (Doc. 32)

As set forth herein and at the Fairness hearing, after considering the foregoing, all papers filed and proceedings had herein, including counsels' comments during the Fairness Hearing, the Settlement Agreement ("Agreement"), and due and adequate notice having

been given to the Settlement Class members as required in the Preliminary Approval Order, the Court finds that the Settlement is fair, reasonable, adequate, and in the best interests of the named Plaintiff and Settlement Class.

**A.    Background**[1]

In 2018, named Plaintiff Robert Koch, filed a class action lawsuit to remedy alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") by the Defendants Desert States Employers and UFCW Unions Pension Plan ("Plan") and its fiduciary Trustees. *See* Complaint in *Koch v. Desert States Employers & UFCW Unions Pension Plan,* Case No. 2:18-cv-04458-SMB (D. Ariz. Dec. 5, 2018) at Doc. 1. Therein, Plaintiff alleged that these violations resulted in the forfeiture and underpayment of pension benefits to Plaintiff and hundreds of putative class members. That case was subject to the district court's Mandatory Initial Disclosure Pilot ("MIDP") program. On January 28, 2019, the Parties filed a Tolling Agreement and Stipulation of Dismissal without Prejudice. (*Id.* at Doc. 17). Therein, the Parties explained that they agreed to pursue mediation to resolve Plaintiff's claims and to avoid further litigation. (*Id.*) They further agreed that any claims asserted in Plaintiff's Complaint would be tolled for a specified time period. (*Id.*) The Court approved the Stipulation and dismissed the case without prejudice. (*Id.* at Doc. 18).

After dismissal of the lawsuit, according to Ms. Martin, the Parties undertook extensive discovery, including a review of Plan documents and amendments, notices, records of Defendant's actuary's calculations for Plan participants, and participant benefit files. (*See* Martin Decl. at Doc. 36). During discovery, Defendants maintained that they did not error when denying Mr. Koch an actuarial increase, and that this non-payment was not a class-wide issue. (*Id.*) Plaintiff learned through discovery that the non-payment was not isolated to Mr. Koch, which prompted additional demands for discovery. (*Id.*) Mr. Koch undertook a review of his Plan documents and provided them to counsel. (*Id.*) Overall, Plaintiff reviewed and analyzed benefit files for more than 2,700 Plan participants

---

[1] The Court will not here repeat all the factual background previously stated in the Preliminary Order. (Doc. 29 at 1-3).

to identify Class Members who were ultimately included in the Settlement.  (*Id.*)  Mr. Koch also contacted other employees and retirees who may be Class members and kept Class counsel apprised of his efforts. (*Id.*)

Class Counsel hired an expert actuary to conduct detailed analysis of claims, and to calculate damages.  (*Id.*)  Defendants engaged their own actuary and performed alternative calculations.  (*Id.*)  Defendants also included the calculations of their defenses and the Parties exchanged their calculations.  (*Id.*)  Thereafter, the Parties met multiple times, engaged in a day long mediation session, with several follow-up discussions.  (*Id.*)  The mediator, Daniel Feinberg, a nationally recognized and experienced mediator in ERISA, produced a Term Sheet that was accepted by both parties on April 2, 2021.  (Doc. 32 at 4).

On November 13, 2020, Plaintiff filed a Complaint ("the instant case") essentially realleging the same ERISA violations against the same Defendants.  (Doc. 1).  After ordering an extension of time for Defendants to Answer, and to continuing the Rule 16 Settlement Conference, the Parties engaged in arms-length negotiations and entered into a Class Action Settlement Agreement.   (Doc. 20-2). No Answer has been filed to the Complaint.

**B.       Jurisdiction of the Court**

This Court has jurisdiction over this matter pursuant to Section 50(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

**C.       Discussion**

The Court has reviewed and considered the Agreement, Final Approval Motion, Attorneys' Fees Motion, and the record as a whole in addition to the findings made on the record in open court, and makes the following additional findings.

**1.       Class Action Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Other than a slight reduction in eligible Class Members, no facts that would affect these requirements have changed since the Court preliminarily approved the class, this

Order thus incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  (Doc. 29).  Accordingly, the following class certification is granted, for settlement purposes, under Rule 23(b)(3) of the Federal Rules of Civil Procedure as: Named Plaintiff Robert Koch on his own behalf and on behalf of the "Actuarial Class" (defined in Doc. 20-2 at 1.01) and the "Suspension Class" (*Id.* at 1.35).

### 2.     Settlement Agreement

The Court finds that the class members were given a fair and reasonable opportunity to object to the settlement and that no class member objected.  Sharon Ebach, a class member who made timely request for exclusion, is excluded from the class and settlement and is not bound by this Order.  (Doc. 30).  No objections were lodged at the Final Fairness Hearing.

The Settlement Agreement identified two sub-classes of individuals who were similarly situated as Named Plaintiff, those in an Actuarial Class and those in a Suspension Class.

The pertinent provisions of the Settlement provides:

-   Defendant Plan will pay $7,950,000 in an aggregate value to a Settlement Fund and no Individual Settlement Award shall revert to Defendants (Doc. 20-2 at 2.02);

-   The Settlement Fund includes Settlement Benefits and Class Counsel's Fee Award and Case Contribution Award;

-   After adjustment for the Fee Award and Case Contribution Award, all of the Settlement Fund will be paid to Class Members and their eligible beneficiaries as set forth in the Agreement and Plan of allocation;

-   The Settlement Agreement provides that the Individual Settlement Award (defined in Doc. 20-2 at 1.20) is automatically paid to Class Members pursuant to the Plan of Allocation without need for the individual to do anything more;

-   Named Plaintiff Robert Koch is to receive a Case Contribution Award in the

amount of $20,000 for his role in the case, the amount of time, effort, risk he expended in initiating the case, being involved in the discovery process and for representing the Class Members interests.  This award shall be deducted from the Settlement Fund and payment shall be made to Named Plaintiff within fourteen (14) days of the Effective Date as set for in the Settlement Agreement;

- Named Plaintiff Robert Koch will also receive an Individual Settlement Award as a member of the Actuarial Class and as a Member of the Suspension Class;

- -Defendants shall take all reasonable and diligent steps to pay all eligible Settlement Class members by the Initial Payment Date in accord with the Settlement Agreement, and

- Named Plaintiff and each Class Member (except for anyone who opted out) shall be (a) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally and forever settled, released, relinquished, waived and discharged all Released Claims, and (b) barred from suing Defendants or the Released Parties in any action or proceeding alleging any of the Released Claims;

- Finally, neither the Parties nor their counsel shall be liable to any person for any determination made by Class Counsel on the Plan of allocation or for any mistakes, incorrect or incomplete data relied upon by Plaintiffs in preparing and producing the Plan of Allocation.

The Court further finds that the settlement of this matter, on the terms and conditions set forth in the Settlement Agreement (Doc. 20-2), is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members.  The Court has taken into account the precision of calculations made for the Named Plaintiff, Actuarial and Suspension Class Members as set for in the Plan of Allocation and the amount of benefits to the individual Class Members or their beneficiaries.  As noted above, the Court the

Defendants never Answered the Complaint and therefore the Court has considered the strength of the Plaintiffs' alleged claims in light of the strength of Defendant's alleged defenses; the complexity, expense, and probable duration of further litigation; and the risk and delay inherent in possible appeals.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  **Class Members**: Pursuant to Rule 23(b)(3) this matter is hereby certified as a class action on behalf of individuals represented by Named Plaintiff.

2.  **Class Representative and Class Counsel Appointment**:  Pursuant to Rule 23, the Court certifies Plaintiff Robert Koch as the Class Representative and Susan Martin, Jennifer Kroll and Michael M. Licata, of Matin & Bonnett, P.L.L.C., as Class Counsel for the Class Members.  The Court finds that Class Counsel and the Named Plaintiff adequately represented the Class for purposes of entering into and implementing the settlement.

3.  **Class Notice and Claim Form**:  Class action notices and claims forms were mailed to all of the Class Members pursuant to Rule 23(c)(2)(B) and due process and constituted the best notice practicable.

4.  **Class Certification**:  The Court finds that this matter satisfies the applicable prerequisites for class action treatment under Rule 23 (a)(1) through (4) in that there is numerosity such that joinder is impracticable; there are common questions of law and fact which predominate over any individual issues; the claims and defenses are typical of all the members and Named Plaintiff and Class Counsel have fairly represented the class.

5.  **Fairness**:  The Court finds the Settlement Agreement of the matter, on the terms and conditions set forth therein is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members.

6.  **Settlement Agreement Terms**:  The Settlement Agreement which is on file in this case shall be deemed incorporated herein, and is finally approved and shall be consummated in accord with the terms and provisions thereof.

7.  **Release of Claims and Dismissal of Case**:  The individual and class releases set forth in the Settlement Agreement are approved.

8.  **Incentive Payment**:  Named Plaintiff shall be awarded $20,000 for his efforts on behalf of himself and the Class.

**IT IS FURTHER ORDERED** that this Court shall retain exclusive jurisdiction over this matter, and with respect to effectuating and supervising the interpretation, implementation and enforcement of the Settlement Agreement and any disputed questions of law or fact related thereto.

**IT IS FURTHER ORDERED granting** Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. 32).

## II.   Motion for Attorneys' Fees and Costs (Doc. 33)

Also pending before the Court is Plaintiff's Motion for a Case Contribution Award and Attorneys' Fees and Costs (Doc. 33).  Plaintiff's Motion proposes an award of attorneys' fees in the amount of 30% of the Settlement Fund ($2,385,000.00) and out-of-pocket costs and expense reimbursement of $89,892.96, for a total of $2,474,892.96 in attorneys' fees and costs to be paid out of the Settlement Fund.  (*Id.*)  Although the Court approved the Settlement Agreement and the service award at the Final Fairness Hearing, the Court took Plaintiff's Motion for Attorneys' Fees and Costs under advisement.  After further review of the Motion, the Court finds the amount requested in attorneys' fees is too high.  Instead of the 30% of the common fund requested by Class Counsel, the Court will award 27%.

### A.   Attorneys' Fees

"[Where] a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" in determining reasonable attorneys' fees.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  To calculate the "lodestar" amount, courts "multiply number of hours reasonably expended by attorneys on the litigation by reasonable hourly rate, raising or lowering lodestar according to factors identified by this circuit."  *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).  Under the percentage-of-recovery method, the "benchmark" is 25% which can be adjusted up or

down if there are "special circumstances." *Id.* Whether awarding the benchmark amount or some other figure, the Court must support an attorneys' fees award with "findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). District courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."[2] *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1048–50). District courts may also cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier. *Vizcaino*, 290 F.3d at 1050.

Here, Plaintiff's Motion proposes an award of attorneys' fees in the amount of 30% of the Settlement Fund ($2,385,000.00). The Court will evaluate the factors under the percentage of recovery method and assess the reasonableness of it by comparing the percentage award to a lodestar calculation. The factors weigh in favor of an upwards adjustment from the benchmark of 25%, but the Court finds 27% to be more of an appropriate award for this case than the 30% proposed by the parties.

**B.    Discussion**

**1.    Skill Required and Quality of Work**

Class Counsel argues this case required considerable skill and thousands of hours of work. (Doc. 33 at 12). Defendants' data was not electronically maintained and therefore a data specialist was hired specifically for this case. (*Id.* at 10). Class Counsel argues this case required extensive knowledge of technical ERISA and Internal Revenue Code provisions and regulatory requirements, particularly because the methodologies and formulas used in calculating pension benefits are constantly evolving under ERISA case law. (*Id.* at 11). It also required Class Counsel to engage an actuarial expert to produce a damages analysis, engage in discussions with Defendants' actuary, and participate in

---

[2] For purposes of this Order, the Court adopts its findings as to factors (1) and (2) as set forth at the Final Fairness Hearing and in this Order approving the Settlement Agreement.

settlement discussions.  (*Id.*)  Class Counsel's discovery yielded the production of more than 136,00 pages of documents and files and multiple damages calculations.  (*Id.*)  Finally, Class Counsel asserts she performed extensive work with an expert witness actuary to analyze claims and damages, determine each individual Class Member's damages under various damage models, and develop the Plan of Allocation and calculate Individual Settlement Awards.  (*Id.*)

Class Counsel has established that they performed a substantial amount of research and conducted an extensive investigation prior to bringing this case, including engagement of an independent actuarial expert to produce a damages analysis and help engage in settlement discussions.  (*Id.* at 11).  Moreover, when settlement discussions stalled, Plaintiff refiled this lawsuit on November 13, 2020.  (Doc. 36 at ¶ 28).  Given Class Counsel's extensive experience in ERISA litigation, and the complex nature of the law, the Court finds this factor weighs in favor of an upwards adjustment of the fee.  *See Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (finding the "skill and labor required to adequately address complex issues of ERISA law weigh in favor of approving the 30% fee").

### 2.    Contingent Nature of the Fee and Financial Burden Carried by Plaintiffs

Class Counsel claims that the firm had to forgo other work to pursue this matter as well as hiring additional paralegal personnel.  (*Id.* at 13).  Class Counsel agreed to advance all expenses and, if Plaintiff had not been able to achieve a settlement and had lost the case, Class Counsel would not have recovered any fees or costs advanced.  (*Id.*)  Class Counsel also paid one half of the fees to the mediator the firm hired to help the parties reach a settlement agreement, which was ultimately executed on June 4, 2021, two months after the mediation commenced.  (Docs. 36 at ¶ 29–31; 33 at 13).  Class Counsel further indicates notice of this potential award was provided to the settlement class members and no objections have been made.  (Doc. 33 at 15).  Finally, Class Counsel notes Plaintiff agreed to a higher 1/3 contingency fee in his fee agreement.  (*Id.* at 14).

Given Class Counsel litigated this case for over three years, advanced all the costs and expenses, and would not have been compensated had Class Counsel not achieved success in this case, the Court finds this factor also weighs in favor of an upwards adjustment of the fee. *See Downey Surgical Clinic, Inc.*, 2016 WL 5938722, at *10 (finding the substantial amount of resources counsel expended when recovery was uncertain weighed in favor of finding that the 30% fee was appropriate).

### 3.    Awards in Similar Cases & Lodestar Cross-Check

Class Counsel's award of attorneys' fees request of $2,385,000.00 represents a lodestar of $662,129.75 and a multiplier of approximately 3.6, which Class Counsel deems reasonable given the contingent nature of this case and the various risks associated with it. (Doc. 33 at 15).

Class Counsel certainly obtained a successful result after years of work.  Class Counsel litigated this case despite a significant risk that Mr. Koch would not prevail on all claims because of "the statute of limitations risk, class certification risk, and the risk related to the absence of direct precedent on various aspects of the claims."  (Doc. 36 at ¶ 16). Class Counsel also had to forgo other opportunities to devote time to this case, particularly because of the small size of the firm.  (Doc. 33 at 10).  Given these circumstances, the Court finds no reason to decrease the 25% benchmark.  The Court finds that Class Counsel's request for an increase to 30%, however, is excessive.  Using Class Counsel's calculation of the lodestar as $662,129.75, an award of 27% of the common fund ($2,146,500 million) would be substantially more than the lodestar.  The Court finds that this lodestar is inflated because the hourly rates charged here exceed the hourly rates charged in this District.

Class Counsel indicates most of the work in this case was performed by partner Jennifer Kroll, whose hourly rate is $690.  (Doc. 36 at ¶ 51).  A senior partner also on the case had an hourly rate of $825 and the associates had hourly rates of $550 and $347; the paralegals had hourly rates of $225 and $190.  (*Id.*)  These rates are inconsistent with rates in the Phoenix market for ERISA matters.

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court determines reasonable hourly rates by looking to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). Class Counsel contends the hourly rates here are commensurate with the prevailing national rates for experienced ERISA class action attorneys. (Doc. 33 at 17). The Court, however, declines to adopt a national standard. The relevant comparison is the hourly rate in the Phoenix market for ERISA litigation. Thus, Class Counsel's declaration from Mr. Gottesdiener, who practices in New York and Washington, D.C., and Class Counsel's comparison to the rates awarded in ERISA litigation outside of this district, are largely unhelpful. (Docs. 33 at 16-17; 36-4 at ¶ 2). While Mr. Kilgard practices in Arizona, he fails to cite any Arizona precedent supporting his contention that the lodestar rates in this matter are within the range of the rates customarily charged in this District. (Doc. 36-3 at ¶ 13–15).

Indeed, the Court notes the case cited by Class Counsel listing reasonable rates for ERISA matters from $600 to $875 per hour for attorneys with more than 10 years of experience is from the Northern District of California and explicitly acknowledged the 4.375 multiplier employed by plaintiffs' counsel to reach the attorneys' fee amount was "on the high end." *See Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018). In recent ERISA suits in this venue, the District of Arizona has awarded hourly rates of $450 and $550 for attorneys with seventeen to twenty years of experience. *See e.g.*, *Lewis v. Unum Life Ins. Co. of Am.*, 2021 WL 4726518, at *3 (D. Ariz. Oct. 8, 2021) (plaintiff's counsel had practiced ERISA disability law since 1998 and litigated approximately 300 cases in Arizona and Nevada); *Corrales v. Federal Express Corporation Short Term Disability Plan et. al.*, No. CV-17-08207-DMF, (D. Ariz. Mar. 26, 2019) (plaintiff's counsel had practiced ERISA litigation since 2004 and litigated approximately 500 benefit claims). Moreover, in a recent Fair Labor Standards Act ("FLSA") case, the District awarded an hourly rate of $325 for an attorney with seven years of experience. *See Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 486 (D. Ariz.

2019).  To be sure, ERISA matters are considerably more complicated than FLSA cases, but the present case does not support more than doubling the reasonable hourly rates.

Given the market rates for attorneys in Phoenix, the Court finds the hourly rates of $825 for a senior partner, $690 for a partner, and $550 and $347 for associates are excessive.  Decreasing the hourly fees of Class Counsel to reflect the market rates, the Court would calculate the lodestar to be 20% less than Class Counsel's calculation, i.e., approximately $530,000.00.  Awarding an upwards adjustment of 27%, or approximately $2.1 million, represents a triple multiplier of the lodestar as proposed by Class Counsel and approximately a 4.0 multiplier of the Court's calculated lodestar.  For the reasons stated in the Court's Order approving the Settlement Agreement and herein, a 4.0 multiplier of the Court's calculated lodestar is appropriate for Class Counsel in this particular case and even exceeds the multiplier requested by Class Counsel.  *See Bailey v. Kinder Morgan G.P., Inc.*, 2020 WL 5748721, at *7 (N.D. Cal. Sept. 25, 2020) (awarding 1.54 multiplier and citing cases awarding multipliers of 1.49, 1.37, 2.26, and 3.36).  Awarding Class Counsel their requested 30%, or approximately $2.4 million, would be a 4.5 multiplier.  This high of a multiplier deviates from the lower multipliers cited in *Bailey*, and therefore the Court will award 27% as appropriate to this case.  *See Johnson*, 2018 WL 2183253, at *7 (citing *Vizcaino*, 290 F.3d at 1052 appx. (finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases)).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Case Contribution Award and Attorneys' Fees and Costs (Doc. 33) is **granted in part**.  Plaintiffs' counsel shall be entitled to 27% of the Gross Settlement Amount ($2,146,500.00) plus reimbursement of out of pocket costs and expenses of $89,982.96.

/ / /

/ / /

/ / /

/ / /

- 12 -

1    **IT IS FINALLY ORDERED** that the Clerk is respectfully directed to terminate

2  this action.

3    Dated this 22nd day of December, 2021.

Honorable Diane J. Humetewa
United States District Judge